EVELYN JOLLEY, By HER NEXT FRIEND, IRWIN JOLLEY, v. WESTERN
UNION TELEGRAPH COMPANY.

(Filed 8 February, 1933.)

1. **Infants C. c—Doctrine of implied emancipation applies to the facts of this case and minor plaintiff could maintain the action.**

The plaintiff, a minor living with and supported by her father, without objection by her father, prepared herself for the teaching profession, and, after consulting her father, accepted by wire a wired offer of a teaching position. Her wired acceptance was not delivered by the telegraph company and she brought action, by her father as next friend, to recover damages sustained: *Held*, the plaintiff could maintain the action in her own right to recover the loss of salary sustained as a result of the defendant's negligence, the doctrine of implied emancipation applying to the facts of the case.

2. **Telegraph Companies A d—Verdict held to establish loss of valid contract entitling plaintiff to recover actual damages.**

Plaintiff brought action against the defendant telegraph company to recover damages for its negligent failure to deliver plaintiff's telegram accepting an offer of a teaching position. The defendant contended that the plaintiff was entitled to nominal damages at most on the ground that there was no valid contract in that the acceptance was not in the exact terms of the offer, and that the county school superintendent had not approved the offerer's appointment. The jury answered the issue as to damage in the plaintiff's favor: *Held*, the issue, unobjected to, embraced the question of whether there was a valid contract, and the evidence cannot be held insufficient as a matter of law to support an inference that the discrepancy between the offer and acceptance was of an immaterial matter; and it appearing that the offerer had authority to employ teachers subject to the approval of the county superintendent, and had conferred with the superintendent regarding the offer in question, the jury could infer that the offerer had at least implied authority to make the contract.

CIVIL ACTION, before *Hill, Special Judge,* at September Term, 1932, of
CLEVELAND.

The plaintiff is a young woman, living at Mooresboro, North Carolina, and graduated at Meredith College in 1929. During her college course she did special work in order to prepare for teaching English and French. She had also taken a correspondence course in the University of North Carolina in order to qualify for a Grade A certificate. W. A. Redfern, on 27 August, 1930, delivered a telegram to the defendant, Western Union, at Chapel Hill, which is substantially as follows: "Miss Evelyn Jolley, Mooresboro, North Carolina. Have been elected to teach English, French, dramatics, Manteo High School. Wire answer. W. A. Redfern." This telegram was received by Miss Jolley

by mail between 10:00 and 10:30 o'clock on 28 August, 1930. After consulting with her father, and at about 12.00 o'clock on said date, she went to the agent of the defendant and delivered for transmission the following message: "W. A. Redfern, Chapel Hill, N. C. Accept English, French, Manteo High School. Evelyn Jolley." Redfern testified that he left a forwarding address with the agent of the defendant at Chapel Hill, and that he inquired at the ·office in Chapel Hill if there was any reply to his telegram, and that he left Chapel Hill on 28 August, about eight o'clock. The forwarding address given was Elizabeth City. Upon arriving at Elizabeth City he made inquiry with regard to a reply from the plaintiff to his message.

As the plaintiff did not hear from Mr. Redfern, she wrote a letter on 6 September, inquiring when the school at Manteo would open. On 8 September, Redfern wrote a letter to the plaintiff, stating: "In reply to your letter of 6 September, I must state that I have employed another for the position since I did not receive an answer to my wire. I waited from 27 August until 4 September for a reply and did not receive one, so employed another.. In fact, your letter tonight was the first I had heard from you."

The evidence tended to show that the salary for the holders of a Grade A. certificate under the State schedule was $100.00 per month. Plaintiff offered evidence tending to show that she purchased clothing and made preparation to assume her duties at Manteo, and that after she was informed by Redfern that her telegram of acceptance had never been delivered, and that another teacher had been employed that she made diligent effort to procure other employment but was unable to do so. The school term at Manteo was eight months and the plaintiff sued for $900.00, covering the expected salary and $100.00 for purchases which she had made, or money spent in preparing to teach in Manteo. Redfern testified that he had authority to employ teachers for the Manteo High School and that he had conferred with the county superintendent at Chapel Hill before offering the position to Miss Jolley. He further testified that there were three trustees of Manteo High School and that the county superintendent was his superior officer. "He had the right to approve or reject my employments. They were submitted to him before they were made. . . . Even after I made an appointment the superintendent had a right to reject it."

The cause was submitted to the jury upon the following issues:

1. "Did the defendant negligently fail to transmit and deliver the telegram as alleged in the complaint?"

2. "If so, was plaintiff injured thereby?"

3. "What damages, if any, is the plaintiff entitled to recover of the defendant?"

The foregoing issues were answered in favor of the plaintiff, and there was an award of $600.00 damages. From judgment upon the verdict the defendant appealed.

*B. T. Falls for plaintiff.*
*Francis R. Stark and Alfred S. Barnard for defendant.*

BROGDEN, J. Two questions of law arise upon the record.

1. Can an unemancipated minor, living with and being supported by her father, recover for earnings lost by the failure to promptly deliver a telegram?

2. Was the plaintiff entitled to recover more than nominal damages?

The plaintiff was a graduate of Meredith College and had prepared herself to teach English and French in the schools of North Carolina. There was no evidence of express emancipation, but evidence of implied emancipation sufficient to support the verdict, was introduced at the trial. The doctrine of implied emancipation is fully recognized in this State. Thus, in *Ingram v. R. R.,* 152 N. C., 762, 67 S. E., 926, the Court said: "It is well settled that if a contract of employment is made by a minor and approved and confirmed by his father, and under such contract the son is to receive the wages earned by him, the father, by approving and confirming the agreement, in effect emancipates his son, as to wages earned by him under the contract, which becomes the property of the son, and not the property of the father. . . . If a minor son contracts on his own account for his services with the knowledge of his father, who makes no objection thereto, there is an implied emancipation and an assent that the son shall be entitled to the earnings in his own right." *Lowrie v. Oxendine,* 153 N. C., 267, 69 S. E., 131. See, also, *Daniel v. R. R.,* 171 N. C., 23, 86 S. E., 174; *Holland v. Hartley,* 171 N. C., 376, 88 S. E., 507.

The record discloses that the daughter conferred with her father before sending the telegram of acceptance. The Redfern telegram offered the position to the daughter. The father had permitted her to prepare for teaching in her own way and made no objection to her telegram of acceptance. He was appointed next friend to bring the suit in behalf of his daughter, and there is no allegation challenging her right to receive the proceeds of recovery. Consequently, this aspect of the case must be resolved in favor of plaintiff.

The defendant insists that the plaintiff, if permitted to recover at all, is not entitled to recover more than nominal damages for two

reasons. First, she was offered a position to teach English, French and dramatics. In her telegram of acceptance she agreed to teach English and French, omitting any reference to dramatics.

Second, that there was no formal approval of the employment of the plaintiff by the school board or county superintendent.

The testimony does not disclose whether dramatics is an essential part of the course of study in Manteo High School or that this subject was a material term of the agreement. However, the jury in answering the second issue found that the plaintiff was "injured" by the failure to deliver the telegram. There was no objection to this issue. Obviously she could not have been injured by the delay except upon the theory that a valid contract existed between the parties. It cannot be said as a matter of law that the evidence did not warrant such an inference.

Upon the facts disclosed at the trial, the applicable principle of law stated by *Hoke, J.*, in *Gardner v. Telegraph Co.*, 171 N. C., 405 is: "A telegraph company sued for breach of contract for failure to properly transmit and deliver a commercial message may be held liable as in other cases on breach established, for such damages as were in reasonable contemplation of the parties and which are capable of ascertainment with a reasonable degree of certainty." The defendant relied upon *Walser v. Tel. Co.*, 114 N. C., 440, 19 S. E., 366; *Newsome v. Telegraph Co.*, 137 N. C., 513, 50 S. E., 279; 144 N. C., 178, 56 S. E., 863; 153 N. C., 153, 69 S. E., 10, and *Tanning Co. v. Tel. Co.*, 143 N. C., 376, 55 S. E., 777. All of these cases are distinguished in the *Gardner case, supra.* Referring to these cases, the Court said: "The cases to which we are referred by counsel for appellee, *Newsome v. Telegraph Co.*, 144 N. C., 178; *Tanning Co. v. Tel. Co.*, 143 N. C., 376; *Williams v. Tel. Co.*, 136 N. C., 82, and *Walser v. Tel. Co.*, 114 N. C., 440, were cases where there was nothing in the message itself or in the facts known or communicated which gave any fair or reasonable intimation that the damages claimed were to be expected or where the evidence did not tend to establish the loss of a definite contract, but only disclosed the preliminary negotiations or trade inquiries from which a contract might or might not arise."

It appears from the evidence that Redfern had authority to employ teachers, and that he had consulted with the county superintendent before offering a position to the plaintiff. These facts readily and reasonably support the inference that Redfern at least was acting within the apparent scope of his authority.

No error.