L. E. McGEE, ADMINISTRATOR OF HOWARD McGEE, v. W. M. CRAWFORD.

(Filed 1 November, 1933.)

1. **Automobiles D c—Rule for determination of whether driver is member of owner's family within meaning of "family car doctrine."**

   In determining whether a driver of an automobile is a member of the family of the owner of the car within the meaning of the "family car doctrine" the rule for determining the family relationship in actions to recover for services rendered a decedent may be applied: those living in the same household subject to the general management and control of the head thereof, and dependent on such supervising and managing head, and mutual gratuitous services with no intention on one hand of paying for such services and no expectation on the other hand of receiving compensation.

2. **Same—Held: evidence should have been submitted to jury on issue of whether driver was member of owner's family under "family car doctrine."**

   Plaintiff's intestate was killed while riding as a guest in a car driven by one of defendants and owned by the other defendant, the grandfather of the driver. There was evidence that the driver of the car had lived with his grandfather for two years and worked in his grandfather's store under an agreement that the grandfather was to furnish him board and lodging and one dollar a day, that the grandson had his own car and used his grandfather's family car for his own pleasure only on this occasion, and there was evidence by plaintiff that the grandson lived with his grandfather as a member of the family. *Held*, the evidence as to whether the grandson was a member of the grandfather's family within the purview of the "family car doctrine" was conflicting, and the issue, on the question of the grandfather's liability, should have been submitted to the jury under correct instructions from the court.

CIVIL ACTION, before *Frizzelle, J.,* at June Term, 1933, of HARNETT. The evidence tended to show that M. C. Crawford, a young man about nineteen years of age, lived in the home of his grandfather, the defendant, W. M. Crawford, and that on or about 9 December, 1931, the said M. C. Crawford, in company with the deceased Howard McGee and two other young men, came to Raleigh. The deceased McGee and the said Crawford rode around the streets of Raleigh until the show was out. Crawford said: "We picked up a girl and rode around the streets of Raleigh until the show was out. . . . We brought the girl back to Angier with us in Johnson's car. Howard McGee introduced me to the girl. . . . We got back to Angier about twelve o'clock. . . . We had to arrange some way to take the girl back to Raleigh. I had a car of my own. I told Howard that we could take her back on that. We had to arrange some way to take the girl back home, and there wasn't any other car to be used except mine. We were going to use mine, but it was an open car and it was an awful cold night. I told Howard maybe I could get my grandfather's truck, which was closed, so we could

take her back on that if we could borrow it, and if not, we would have to carry her back on my car. . . . I did not go in the house, but spoke loud enough to the ones in the room, my grandfather and my grandmother, to hear me, and asked could I use the truck to carry a girl home. My grandmother spoke and said if I would hurry back it would be all right. This was the only time after I bought my own car that I used the Ford pickup of W. M. Crawford. . . . The Ford pickup is a one-seated affair. All three of us got in that truck and went back to Raleigh to carry the girl home. My grandfather did not speak to me that night. Neither my grandfather nor grandmother had any interest in the girl. They did not know her. After we took the girl back home to Raleigh we started back to Angier. The accident happened on the way back. Howard McGee was riding in the seat beside me. . . . As I approached the scene of the accident I was traveling at around thirty-five miles an hour—not any over forty. . . . The car drifted off the side of the road and I lost control of it when it hit something. . . . I saw I had lost control, so I grabbed Howard and tried to hold him so he would not be jostling around, and then something, some tremendous jolt, jarred me loose from him, and then it was all over with. I imagine I endeavored to get hold of Howard McGee at the time I hit the bridge." After the wreck M. C. Crawford went to the home of a witness Stephenson to secure help. McGee was killed, and there was evidence tending to show that M. C. Crawford stated that he had dropped off to sleep and had a wreck.

The evidence further tended to show that the defendant, W. M. Crawford, was engaged in the mercantile business and was the grandfather of M. C. Crawford, the driver of the truck at the time of the killing. The evidence showed that the Ford pickup truck was used for delivering groceries and merchandise, and also, for the pleasure of the family of defendant, W. M. Crawford. There was evidence that for the last three to five years M. C. Crawford stayed at the home of his grandfather and worked in the store, and that the defendant, W. M. Crawford, exercised control over M. C. Crawford, "the same as a father to a son." There was evidence in behalf of defendant that the father and mother of M. C. Crawford were living at Erwin, Harnett County, and that he lived with his parents until 1929, when he went to work for his grandfather; that the grandfather had employed him to work in his store upon an express contract to pay a dollar a day for his services, and in addition, to furnish board and lodging, and that the said M. C. Crawford at the time of the accident, was an employee of his grandfather, W. M. Crawford.

The defendant in apt time tendered the following issue: "Was the said M. C. Crawford at the time of the injury complained of, a member of the family of W. M. Crawford, the defendant?" The court refused

to submit such issue and the defendant excepted, and issues of negligence, contributory negligence and damages were submitted to the jury, and the verdict awarded the sum of $2,000 to the plaintiff.

From judgment upon the verdict the defendant appealed.

*Dupree & Strickland for plaintiff.*
*A. J. Fletcher for defendant.*

Brogden, J. Was M. C. Crawford a member of the family of his grandfather, W. M. Crawford, within the purview of the family purpose doctrine, imposing liability for automobile injuries?

It is conceded that if M. C. Crawford was a member of his grandfather's family and his grandfather kept the Ford truck for the combined purpose of "business and pleasure of the family" that the defendant would be liable for the negligence of his grandson. Upon the other hand, if the said M. C. Crawford was an employee of the defendant at the time and using the car exclusively for his own pleasure and purposes, then the defendant would not be liable to plaintiff's intestate.

This Court has heretofore undertaken to set forth the essential facts constituting the family relationship for purposes of determining the liability for services rendered. It is conceived that the same principle would apply to cases of the type involved in this appeal. In determining the question as to whether a grandchild could recover for services rendered a grandfather, this Court in *Dodson v. McAdams,* 96 N. C., 150, said: "It seems to be settled law—certainly in this State—that if a grandfather receives his grandchild or grandchildren into his family, and treats them as members thereof—as his own children—he and they are *in loco parentis et liberorum,* and hence, if the grandchild in such case shall do labor for the grandfather, as a son or daughter does ordinarily as a member of the family of his or her father, in that case, in the absence of any agreement to the contrary, no presumption of a promise on the part of the grandfather to pay the grandchild for his labor arises; the presumption is to the contrary. The grandchild, as to his labor or services so rendered in such case, is on the same footing as a son or daughter. And this is so, after the grandchild attains his majority, if the same family relation continues. This rule is founded, in large measure, upon the supposition that the father clothes, feeds, educates and supports the child, and that the latter labors and does appropriate service for the father and his family in return for such fatherly care, and domestic comfort and advantage. The family relation and the nature of the service, rebut the ordinary presumption that arises when labor is done for a party at his request, express or implied, of a promise on his part to pay for it. Applying this rule, this Court held in *Hussey v. Rountree,* 44 N. C., 111, that though a step-father is not bound to support his step-children, nor they to render him any service, yet if he

support them, or they labor for him, in the absence of an express agreement, they will be deemed to have dealt with each other as parent and child and not as strangers." The same principle applies to grandfather and grandchild. *Hudson v. Lutz,* 50 N. C., 217. See *Henderson v. McLain,* 146 N. C., 329, 59 S. E., 873.

The term "family" is an elastic expression and must necessarily vary with given facts and circumstances, but the description of the relationship given by our Court, *supra,* implies: (1) those who live in the same household, subject to the general management and control of the head thereof; (2) dependence of the members upon such supervising, controlling and managing head; (3) mutual gratuitous services with no intention on one hand of paying for such services, and no expectation on the other of receiving reward or compensation.

Applying the principle of law to the facts, it appears that M. C. Crawford had his own car, and that for two years or more he had lived in the home of his grandfather and worked in the grandfather's store. He borrowed a truck belonging to the defendant for his own purposes and pleasure. The plaintiff offered testimony tending to show that the grandson lived in the home of the grandfather as a member of the family. The testimony of defendant tends to show that the grandson was an employee of his grandfather, and that such employment was based upon contract providing a stipulated sum in money per week, and in addition thereto, board and lodging in the grandfather's home.

This Court has never extended the family purpose doctrine to mere employees, and certainly the facts in this case do not warrant an expansion of the principle. Family membership was essential to liability in the case at bar, and as the evidence upon the point was conflicting, the issue with respect thereto, tendered by the defendant, should be submitted to the jury with proper instructions from the court. See *Smith v. Callaghan,* 64 A. L. R., 830, and *Watson v. Burley,* 64 A. L. R., 839, and annotation.

New trial.