## MRS. HARVEY JAMES v. EMORY JAMES.

(Filed 22 May, 1946.)

**1. Pleadings § 22—**

In claim and delivery instituted by a widow on the ground of owner-ship of the property in suit by allotment to her in her year's allowance, an amendment permitting her to allege title by gift *inter vivos* from her husband does not change the nature of the action but merely affects the source of title, and the court has the discretionary power to permit such amendment.

**2. Claim and Delivery § 14: Gifts § 1—**

This action was instituted in replevin by a widow to recover possession of an automobile from her father-in-law. Plaintiff's evidence that the car had been purchased by her husband and that he had made a valid gift *inter vivos* of the car to her *is held* sufficient to overrule defendant's motions to nonsuit.

**3. Parent and Child § 4c—**

Where a minor son purchases a car with his own earnings, the fact that his father had full knowledge of the transaction and acquiesced therein, with other pertinent evidence, may be considered upon the question of emancipation in derogation of the father's claim to the car on the ground that he was entitled to the son's earnings during minority.

**4. Claim and Delivery § 14: Trial § 31—Charge held for error as expression of opinion on weight and sufficiency of evidence.**

This action in replevin was instituted by a widow to obtain possession of an automobile from her father-in-law. There was conflicting evidence as to whether the car had been purchased by defendant or plaintiff's husband. Plaintiff introduced letters from her husband disclosing that he regarded the car as his and intended making a gift *inter vivos* of it to her. After charging upon the evidence of title, the court, in charging upon the evidence of gift instructed the jury to answer the issue in plain-tiff's favor if they were satisfied by the greater weight of the evidence of the elements of a gift *inter vivos. Held:* The court inadvertently over-looked the fact that title was still in issue, and the instruction must be held for error as an expression as to the weight and sufficiency of the evidence on the question of title. G. S., 1-180.

APPEAL by defendant from *Olive, Special Judge,* at October Civil Term, 1945, of DAVIDSON.

(Pertinent facts are stated in the opinion.)

*Don A. Walser and Charles W. Mauze for defendant, appellant.*
*Phillips & Bower for plaintiff, appellee.*

SEAWELL, J. This is an action in replevin to recover a Ford automobile alleged to be the property of plaintiff and to be wrongfully detained by defendant. Claim and delivery proceedings were issued, and defendant gave bond and retained possession of the property. The trial resulted in a jury verdict unfavorable to the defendant, and he appealed from the judgment awarding the car to plaintiff.

In her original complaint, the plaintiff claimed ownership by virtue of an allotment of the automobile to her in her year's allowance as widow of her husband. Over objection by defendant, she was permitted to strengthen her claim by alleging title by gift *inter vivos.* The amendment does not change the nature of the action, but merely affects the source of title. It was within the discretion of the court, and the objection is without merit.

The plaintiff is the widow of Harvey James, a young soldier who died in Italy during the Allied invasion. He was a son of the defendant. The plaintiff was under twenty-one years of age when this action began, but reached her majority during its pendency. She and young James had been going together for several years, and were married in 1943, after his induction into the Service and while he was home on a furlough. Harvey was soon thereafter called overseas. The automobile was purchased prior to the marriage and while Harvey was a minor, about eighteen years of age, living with his father, but employed elsewhere. He was using an old Chevrolet car to drive to and from the mills where he was employed. The evidence for the plaintiff tends to show that the purchase of the Ford automobile was made by Harvey James with the knowledge and permission of his father.

The dealer from whom the car was purchased testified that the transaction was with Harvey, who bought the car, but the papers were put in the name of the father and title registered in his name at the dealer's suggestion because the young man was under age. The difference between the amount allowed for the Chevrolet (which was $35.00 according to the father's statement) and the total price of the Ford was paid in cash. H. W. Craver, from whom the money was borrowed, said that he loaned Harvey the money to pay for the car, which was around $200.00, and this Harvey subsequently paid back to him in thirty-one weekly installments. He testified that the installments were all paid by Harvey, and none of them by the defendant, and defendant did not claim

the car.  He delivered all the papers to Harvey upon the payment of the last installment.

There was further evidence to the effect that after the marriage, Harvey and his wife stayed one while at his father's and sometime at the home of his father-in-law; that the car was stored in a shed at Emory James' place because there was no place for it at the home of the father-in-law—that it was blocked up there and covered with a canvas.

There was also evidence that the son sent money from Europe to his father to have repairs made on the car, or have it "fixed up."  Several witnesses testified that the defendant on several occasions had stated that the car was Harvey's.

A number of letters written by Harvey James and received by his wife here before her husband was killed were introduced in evidence as indicating that Harvey intended a gift of the car to his wife.  Some of them are as follows:

(November 1, 1943)

"Dearest Darling:

Well, darling, I guess my Ford is still covered up for me when I get back home to use it."

Signed: . "Love, Harvey."

(December 19, 1943)

"My darling wife and baby:

I said hello and be good darling I will send you some money soon and you can spend it or keep it, and now I am going to send my daddy some too for fixing my Ford for me."

Signed: "Love, Harvey."

(May 4, 1944)

"Dearest Darling:

I was glad to hear from you darling.  You said every time you saw my Ford I am bound to be there.  Well, I wish I was and hope to see you soon. . . . Darling, you said you were going to learn to drive and get my Ford.  Well, I wish you would learn to drive, when I was home. But you see my Ford is your Ford, for I give it to you and I am going to have it put in your name as soon as I can."

Signed: "With love, love forever, Harvey."

The defendant testified that at the time of the purchase Harvey James was a minor.  He worked at the cotton mill and at home, and defendant

boarded and clothed him. Witness testified that he traded cars with Essick—a 1928 Chevrolet for a 1935 Ford—and agreed to pay $300.00 "except with the car for said 1935 Ford." Title to the car was in witness' name, and the son did not own any part of it. Witness said his son paid part on the car, but counting the 1928 car, witness paid around half of it. The trade, defendant stated, was made by him and the papers delivered to him by Craver when the car was paid for.

The conditional sales agreement was put in evidence, signed by Emory James, and showing a note for $200.52, balance on purchase price of $225.00.

Witness stated that he had two other cars beside the Ford, the title to which Ford was delivered to him by Craver.

Witness denied that his son had sent him any money. Said he had sent wife of witness some. He stated Essick did not mention Harvey being under age, that he traded in his own behalf. Said he had repaired the car at his own expense, costing around $140.00.

Baxter Weaver, brother-in-law of defendant, testified the trade was made with Emory James.

The defendant at apt times demurred to the evidence and moved for judgment as of nonsuit. The motions were properly overruled.

In addition to other objections, not now necessary to discuss, the defendant argues that during the period covered by the installments alleged to have been paid by his son, the latter was a minor and that defendant was by law entitled to his earnings. If that principle can be extended to property purchased by the earnings of the son under the circumstances here outlined, the fact that the father, with the full knowledge of the facts and acquiescence therein, permitted the expenditure and purchase, if the evidence should so disclose upon a second trial, may, with other pertinent evidence, be taken into consideration upon the question of emancipation. *Jolley v. Telegraph Co.,* 204 N. C., 136, 138, 167 S. E., 575; *Holland v. Hartley,* 171 N. C., 376, 88 S. E., 507; *Lowrie v. Oxendine,* 153 N. C., 267, 69 S. E., 131; 46 C. J., p. 1341, *et seq.;* 39 Am. Jur., Parent and Child, sec. 64. The objection is not conclusive here.

However, referring to a portion of the plaintiff's evidence, respecting the gift *inter vivos* from Harvey to plaintiff, the judge charged the jury that if they were satisfied by the greater weight of the evidence of the truth of it, they should find in favor of the plaintiff or answer the first issue as to ownership "Yes."

This inadvertently ignores the fact that the title to the ownership of the car in Harvey was still at issue, and may be taken as assuming the fact that it was sufficiently proved or as expressing an opinion on the weight and sufficiency of the evidence. G. S., 1-180. *S. v. Kline,* 190 N. C., 177, 129 S. E., 417; *Morris v. Kramer Bros. Co.,* 182 N. C., 87,

90, 108 S. E., 381; *Speed v. Perry,* 167 N. C., 122, 83 S. E., 176; *Withers v. Lane,* 144 N. C., 184, 187, 56 S. E., 855.

Since the standard we are required to apply does not yield to occasion, the case must stand for a rehearing. The defendant is entitled to a new trial. It is so ordered.

New trial.