CHARLES B. SMITH, BNF., PLAINTIFF v. EDDIE MARTIN SIMPSON AND SARAH ELIZABETH SIMPSON, GDN. OF WAYNE ROSSER SIMPSON, AND THOMAS ROBERT McCANTS, DEFENDANTS.

(Filed 11 December 1963.)

**1. Appeal and Error § 44—**

Where the pleadings, evidence and record of the trial affirmatively show that plaintiff predicated his assertion of a defendant's liability under the family purpose doctrine solely upon the basis of such defendant's ownership of the vehicle, plaintiff is in no position to complain if the court submits the issue upon the theory advanced by plaintiff.

**2. Automobiles § 55—**

The application of the family purpose doctrine does not depend upon ownership of the vehicle, and a person who is not the owner but who maintains or provides an automobile for the use, pleasure, and convenience of his family and who controls or has the right to control its use for such purposes, and who actually or impliedly authorizes members of his family to so use it, is liable under the family purpose doctrine for the negligent operation of the car by a family member, be he a minor or adult, a spouse, parent, brother, sister, niece, or even more remote kin, provided such person is a *bona fide* member of the household.

**3. Same; Parent and Child § 7—**

A parent may not be held liable for the negligent operation of an automobile by his child merely by reason of the relationship, an automobile not being a dangerous instrumentality, and there being no contention that the parent knew that the child was a reckless driver so as to present the question of liability under G.S. 1-538.1.

**4. Automobiles § 55—　Evidence held insufficient predicate for application of family car doctrine.**

Evidence disclosing that the child, on his own initiative, negotiated the purchase of an automobile for himself, that he made the down payment with his own money and obligated himself to pay the balance of the purchase price out of his own earnings, but that because of his minority the seller would not accept his credit, so that, in order to consummate the sale, his father executed the note and conditional sales contract for the balance of the purchase price and applied for and obtained in his own name the certificate of title, registration card, and liability insurance, and that when the purchase was consummated the keys were delivered to the son and that he retained them continuously and exercised exclusive control in the use of the car and paid for its maintenance, *is held* insufficient predicate for the application of the family purpose doctrine.

**5. Parent and Child § 4—**

If the father, with full knowledge of the facts and acquiescence therein, permits his son to receive his own earnings and does not restrict him in the use thereof, there is an emancipation *pro tanto.*

**6. Appeal and Error § 41—**

The admission of incompetent evidence over objection cannot be held prejudicial where thereafter substantially similar evidence is admitted without objection.

Sharp, J., dissenting.

Parker and Bobbitt, JJ., join in the dissent.

Appeal by plaintiff from *Olive, J.,* September 1962 Session of Moore, docketed and argued as case No. 452 at the Spring Term 1963.

Action to recover damages for personal injuries resulting from a three-car collision.

The collision occurred about 11:30 P.M., 17 October 1960, on U. S. Highway No. 1 about 1 mile south of Vass in Moore County. At the point of the accident U. S. No. 1 is a 2-lane paved highway, 21 feet wide, and runs generally north and south. Plaintiff was a passenger in a 1960 Chevrolet operated by Wayne Rosser Simpson (hereinafter referred to as Wayne). The Chevrolet was registered in the name of Eddie Martin Simpson (hereinafter Mr. Simpson). Wayne was the minor son of Mr. Simpson, who was not in the car. Wayne was driving northwardly, came up behind a tractor-trailer and attempted to pass. When he got alongside the tractor-trailer two south-bound cars were meeting the tractor-trailer, the first a Plymouth and the second a Pontiac operated by Thomas Robert McCants. The Plymouth pulled to the shoulder. Wayne side-swiped it and ran head-on into the Pontiac.

In the collision with the Pontiac plaintiff sustained injuries which paralyzed him from his waist down.

Plaintiff instituted this action against Wayne, Mr. Simpson and Mc-Cants. The jury found that plaintiff was injured by the negligence of Wayne and awarded $20,000 damages. It found that McCants was not guilty of actionable negligence and that Mr. Simpson was not liable under the family purpose doctrine. From a judgment upon the verdict plaintiff appeals.

*Bryan & Bryan and Wilson & Bain for plaintiff appellant.*

*Quillin, Russ & Worth for Thomas Robert McCants, defendant appellee.*

*Haywood and Denny for Eddie Martin Simpson and Sarah Elizabeth Simpson, Guardian ad litem of Wayne Rosser Simpson, defendant appellees.*

MOORE, J.  None of plaintiff's exceptions relating to Wayne are brought forward in his brief—they are therefore abandoned. He seeks a new trial as to Mr. Simpson and McCants.

(1). It is contended that the court erred in its instructions to the jury on the second issue relating to the liability of Mr. Simpson under the family purpose doctrine.

Plaintiff alleges in paragraph 7 of his complaint that "Eddie Martin Simpson owned the 1960 Chevrolet . . . , . . . the said automobile was owned and furnished by Eddie Martin Simpson for the use, pleasure, and convenience of his family; and that the defendant Wayne Rosser Simpson, who was a member of the family of Eddie Martin Simpson . . . , was permitted and allowed to use and operate the said 1960 Chevrolet for his own use, pleasure and convenience; and that he was . . . operating the said 1960 Chevrolet owned by his father pursuant to the family purpose for which it was furnished, and with the permission of his father . . . ." Mr. Simpson, answering, admitted that the automobile was registered in his name but denied the allegations of paragraph 7 of the complaint.

The evidence bearing upon the allegations of paragraph 7 of the complaint is in all material aspects uncontradicted and tends to establish the following facts: At the time of the accident Wayne was 18 years of age, lived in his father's home and went to school. He had always lived with his father. Mr. Simpson was a farmer and also operated a filling station. Wayne worked on the farm and was a member of his father's household. His father was head of the house. Wayne testified that he respected his father and was obedient to him. Until about

a month before the accident Wayne had owned a 1957 Chevrolet, the title to which was registered in his own name (source not disclosed). In 1960 Wayne made a profit from a tobacco crop on acreage he himself had rented from a pulpwood company—he did the work, bought the fertilizer and paid all expenses of producing the crop. His father permitted him to keep these earnings. Wayne negotiated for the purchase of a new 1960 Chevrolet—his father had no part in the negotiations. The down payment was the 1957 Chevrolet and $400 in cash from his tobacco crop earnings; the balance was to be paid out of his tobacco crop the next fall. When the Motor Company refused to accept credit papers executed by Wayne, because he was a minor, Mr. Simpson, at Wayne's request, executed the note and conditional sales contract for the $1754.09 balance, applied for and took the title certificate in his name, and obtained in his name liability insurance. The insurance was an assigned risk policy because Wayne, the principal driver, was a minor. Wayne paid the premium. The registration card was mailed to Mr. Simpson who retained it in his possession. After the credit papers were signed Wayne drove the car home—the keys were delivered to him and he kept them continuously thereafter. Wayne bought the gas and oil for the car and stood for the repairs. He kept the car in his father's yard, drove it to school and anywhere he wanted to go without obtaining specific permission from his father. Mr. Simpson testified that Wayne "has been going on his own since he was 16 without asking me *(sic)* when he could come or go." Neither Mr. Simpson nor any other member of the family, except Wayne, used the Chevrolet. Mr. Simpson owned a pickup truck and an Oldsmobile which anybody in the family could use. He listed the Chevrolet for taxes along with his other motor vehicles, but no taxes had been paid at the time of the accident. Wayne testified: "I was the only one who used the Chevrolet. It was mine."

The court submitted to the jury this (second) issue: "Was the defendant, Eddie Martin Simpson, the owner of the 1960 Chevrolet automobile for use as a family purpose automobile, and was Wayne Rosser Simpson using the 1960 Chevrolet automobile under such family purpose?" The jury after hearing the court's charge answered the issue "No."

After defining the family purpose doctrine the judge gave the following instruction:

"... (I)f another person had bought and paid for the automobile and had it in their control and use, and the person in whose name it was registered was actually not the owner and had no control of the use of it, then the person who really purchased it

and owned it, paid for it, and had the control and use of it would be the real owner."

In applying the law to the facts of the case the judge told the jurors that in order to answer the second issue YES they must find that:

". . . Eddie Martin Simpson had provided this automobile for the members of the family and Wayne Rosser Simpson was one, that at the time he was operating the automobile as a member of the family, (and that it was owned by Eddie Martin Simpson) and provided for the use and convenience and pleasure of the family . . . ."

He further instructed the jury:

". . . (I)f you are not satisfied by the greater weight of the evidence that Eddie Martin Simpson was the owner of the 1960 Chevrolet automobile for use as a family purpose automobile, and that Wayne Rosser Simpson was using said 1960 Chevrolet automobile at the time in question under such family purpose, it would be your duty to answer it 'No'."

The plaintiff excepted to the charge for that the judge made the application of the family purpose doctrine to the facts of this case depend upon the father's beneficial ownership of the Chevrolet rather than upon his right to control it.

The question raised is not that the family purpose doctrine was not submitted to the jury, but that it was limited so as to be applicable only if they found that Mr. Simpson owned the automobile. It will be observed that the plaintiff alleges that Mr. Simpson owned the automobile, and plaintiff's theory of the application of the doctrine, as set out in the complaint, is that the car was owned by Mr. Simpson. Plaintiff did not note an exception to the form or submission of the issue. Issues arise upon the pleadings. *Williams v. Highway Commission*, 252 N.C. 514, 518, 114 S.E. 2d 340. A reading of the record of the trial leads to the definite impression that in offering evidence and cross-examining witnesses plaintiff focused his attention on the task of proving that Mr. Simpson owned the vehicle. The charge of the court was clearly based on the theory set out in plaintiff's pleadings. Plaintiff is in poor position to complain when the judge has tried the case in accordance with guide lines he himself has laid down. However, we choose to disregard these valid but technical principles of procedure. We consider the matter of sufficient moment to warrant an inquiry whether, assuming that Wayne was the beneficial owner of the auto-

mobile, there was sufficient evidence to require a submission of an issue as to Mr. Simpson's liability.

It is not essential to the application of the family purpose doctrine that the one upon whom it is sought to fix liability for the negligent operation of a family car be the owner. In *Matthews v. Cheatham*, 210 N.C. 592, 188 S.E. 87, the minor daughter of male defendant won an automobile in a contest and took title in her own name; she was a member of her father's household, kept the car in her father's garage with his automobile, and drove it only with the specific consent of her parents; all members of the family used it and the father *maintained* it, bought the gasoline and oil and paid for repairs, and listed and paid taxes on it; her mother was driving it at the time of the accident. In support of the ruling that the evidence was sufficient to take the case to the jury as to the father's liability, this Court said:

> "In *Watts v. Lefler*, 190 N.C. 722, at p. 725, this Court quotes with approval the following statement from Berry on Automobiles (4th Ed.) sec. 1280: 'The rule is followed in some of the states in which the question has been decided, that one who *keeps* an automobile for the pleasure and convenience of himself and family, is liable for injuries caused by the negligent operation of the machine while it is being used for the pleasure or convenience of a member of his family.'
>
> "Huddy's Encyclopedia of Automobile Law (9th Ed.), Vol. 7-8, page 324, states the rule: 'The person upon whom it is sought to fasten liability under the 'family car' doctrine must *own, provide, or maintain* an automobile for the general use, pleasure, and convenience of the family. Liability under this doctrine is not confined to owner or driver. It depends upon control and use'." (Emphasis added.)

"It is said to be one of the indispensable requisites of the family purpose doctrine that the person on whom it is sought to fasten liability under that principle *owns, maintains,* or *provides* an automobile for the general use, pleasure, and convenience of the family." (Emphasis added.) 5A Am. Jur., Automobiles and Highway Traffic, s. 601, p. 604. "An indispensable requisite of the family purpose doctrine is that the person on whom it is sought to impose liability own, maintain, or furnish the automobile, and have or exercise some degree of control over its use. Thus, where the head of the family does not own, maintain, or control the family automobile, he is not liable under the family purpose doctrine for negligence in its use by a member of his family; liability may not be imposed on the head of a family by rea-

son of his knowledge and consent to its use for a family purpose where he does not have ownership, possession, or control of the vehicle, but where the head of the family controls and maintains the vehicle he may be liable under the family purpose doctrine even though he does not own it." 60 C. J. S., Motor Vehicles, s. 433c, p. 1070. See also the discussions in *Goode v. Barton,* 238 N.C. 492, 78 S.E. 2d 398; *Foran v. Kallio,* 355 P. 2d 544 (Wash. 1960); *Richardson v. True,* 259 S.W. 2d 70 (Ky. 1953); *McNamara v. Prather,* 127 S.W. 2d 160 (Ky. 1939); *Euster v. Vogel,* 13 S.W. 2d 1028 (Ky. 1929). It would seem that in *Lynn v. Clark,* 252 N.C. 289, 113 S.E. 2d 427, in using the expression "owned, provided *and* maintained" we inadvertently used the word "and" instead of "or." So far as the facts of that case are concerned the inadvertence is of no importance—the defendant mother admitted ownership of the car.

In discussing *Small v. Mallory,* 250 N.C. 570, 108 S.E. 2d 852, and *Matthews v. Cheatham, supra,* the commentator in 38 N. C. L. Rev. 250, 251, says:

> "It seems that the true test for determining which member of the family is to be held liable under the doctrine is one of control. The basic question to be determined then is who controls the car. . . .
>
> "The factors of ownership and maintenance have been used as a further guide in determining which member of the family controls the car. . . . (I)n *Goode v. Barton* it was expressly held immaterial whose funds were used to purchase the car, since liability under the doctrine 'is not confined to owner or driver . . . [but] depends upon control and use.' The 'use' referred to here can only mean that use for which the car was bought, i.e., use by the family as a general purpose car. Since ownership, both legal and equitable, has been held not to be determinative of control, it would seem that *maintenance* is the more important guide in determining control and, hence, in predicting family member on whom liability will fall. In taking this view of the doctrine, North Carolina is in line with the weight of authority." (Emphasis added).

"To impose liability under the (family purpose) doctrine it is essential to establish that the party on whom liability would be imposed actually or impliedly authorized the use of the vehicle. It must be subject to his control. The test is not who owns the vehicle but control or the right to control. Since ownership presumptively indicates the right to control, it is frequently stated as one of the elements necessary for the application of the doctrine. But one may in fact exercise

control and direct the use of property without in fact being the owner." *Griffin v. Pancoast,* 257 N.C. 52, 125 S.E. 2d 310.

It is the law then in North Carolina that one, not the owner, who *maintains* or *provides* an automobile for the use, pleasure and convenience of his family, controls or has the right to control it in such use, and actually or impliedly authorizes members of his family to so use it, is liable under the family purpose doctrine for the negligent operation of the car by a family member, causing injury. It has been held that the family purpose may extend to and be exercised by only one member of the family. *Goode v. Barton, supra.*

In considering plaintiff's exception to the charge, we assume as the exception requires us to do and as the jury seems to have found, that the motor vehicle was not owned by Mr. Simpson but was owned by Wayne. There is no evidence that Mr. Simpson maintained it or that he, or any members of his family other than Wayne, used or directed the use of it or exercised any control of it. Wayne was a minor son of Mr. Simpson, and at the time of the accident was a member of his household. The inquiry then is whether Mr. Simpson *provided* the Chevrolet for Wayne and had the right thereby, or for some other reason, to *control* its use.

It may be that the use by us of the expression "control and right to control" without some explanation and restriction has led the bench and bar into uncertainty. The question here as to Mr. Simpson's liability does not relate to his right to control his minor son, but his legal right to control the use of the 1960 Chevrolet. We are too inclined to think of the family purpose doctrine as a sort of antidote to juvenile delinquency or a palliative for traditional youthful recklessness. The doctrine is not confined to situations involving parent and minor child. It applies with equal force when the child is an adult. "It makes no substantial difference as regards the liability of a parent (under the family purpose doctrine) whether the child is a minor or an adult. The question of liability does not depend upon the relation of parent and child, and the parent is under no more legal obligation to supply an automobile for the use and pleasure of a minor child than he is for the use and pleasure of an adult child." *Watts v. Lefler,* 190 N.C. 722, 725, 130 S.E. 630. A person may be liable under the doctrine for damage caused by the negligence of spouse, parent, brother, sister, nephew, niece, grandchild or other of more remote kinship, or of one not of kin, provided he is a bona fide household member. *Tart v. Register,* 257 N.C. 161, 125 S.E. 2d 754; *Manning v. Hart,* 255 N.C. 368, 121 S.E. 2d 721; *Westmoreland v. Gregory,* 255 N.C. 172, 120 S.E. 2d 523; *Small v. Mallory, supra; Stansel v. McIntyre,* 237 N.C. 148, 74 S.E. 2d 345;

*White v. McCabe,* 208 N.C. 301, 180 S.E. 704; *McGee v. Crawford,* 205 N.C. 318, 171 S.E. 326; 60 C. J. S., Motor Vehicles, s. 433d, p. 1071.

"The mere fact of the relationship does not render a parent liable for the torts of his child. Liability of the parent must be predicated upon evidence that the child was in some way acting in a representative capacity such as would make the master responsible for the servant's tort, or on the ground that the parent procured, commanded, advised, instigated or encouraged the commission of the tort by his child, or that the parent was independently negligent, as in permitting the child to have access to some dangerous instrumentality." 3 Strong: N. C. Index, Parent and Child, s. 7, p. 529; *Insurance Co. v. Faulkner,* 259 N.C. 317, 130 S.E. 2d 645; *Langford v. Shu,* 258 N.C. 135, 128 S.E. 2d 210; *Griffin v. Pancoast, supra; Lane v. Chatham,* 251 N.C. 400, 111 S.E. 2d 598; *Hawes v. Haynes,* 219 N.C. 535, 14 S.E. 2d 503; *Bowen v. Mewborn,* 218 N.C. 423, 11 S.E. 2d 372. G.S. 1-538.1 has no application in the instant case. Plaintiff does not seek to impose liability herein upon Mr. Simpson on the ground that he knew Wayne was a reckless driver. And an automobile is not an inherently dangerous instrumentality. *Linville v. Nissen,* 162 N.C. 95, 77 S.E. 1096; 8 N. C. L. Rev. 259. The State of North Carolina passes upon the qualifications of and issues drivers licenses to children over 16 years of age, and as a matter of public policy places its stamp of approval on the operation by them of motor vehicles. The relationship does not alone make a parent answerable for the negligent conduct of his minor child. There must be something besides parenthood to connect him with the wrong before he may incur liability. *Linville v. Nissen, supra.* The question in a case such as the one at bar is whether the child, be he a minor or an adult, was acting for the parent, was using the automobile for the purpose for which the parent provided it. *Watts v. Lefler, supra.* The very genesis of the family purpose doctrine is agency. The question of liability for negligent injury must be determined in that aspect. *Vaughn v. Booker,* 217 N.C. 479, 8 S.E. 2d 603. The right and duty of a parent to control the activities of his minor child is not involved. It matters not whether Wayne was a minor or an adult. If Mr. Simpson had the right to control the 1960 Chevrolet, it must rest upon some ground other than the mere relationship of parent and child.

Ownership of personal property ordinarily carries with it the right of control and use. *Griffin v. Pancoast, supra.* For the purposes of this discussion, Wayne owned the car, not Mr. Simpson. A person having possession of an automobile by reason of a duty or license to preserve or use it, or by bailment, or acquiescence of the owner, or other spe-

cial right, has the right to control its use. Examples: As executor, *Chappell v. Dean,* 258 N. C. 412, 128 S.E. 2d 830; as president of corporation, *Hexter v. Burgess,* 184 S.E. 769 (Ga. 1936). Under the family purpose doctrine one who *provides* or *maintains* an automobile for the pleasure and convenience of his family is deemed to have the right, in the absence of circumstances requiring a different result, to control its use. In the instant case there is no evidence that Mr. Simpson maintained the car or had any special possessory right with respect thereto, so the question is whether he *provided* it. If he did not, there is no other status or relationship which bestows upon him the right of control.

The evidence is that Wayne personally negotiated with the Motor Company and agreed upon the terms of purchase of the automobile. He made the down payment by delivery of his 1957 Chevrolet, title to which was in his name, and payment of $400 in cash from his own earnings. When the purchase was consummated, the keys were delivered to him, he retained them continuously and exercised exclusive control and use of the car. He bought the gasoline and oil and took care of repairs. He paid the insurance premium. He was obligated to pay the balance of the purchase price from his tobacco crop, his own earnings. Because the Motor Company would not accept the credit instruments of a minor, Mr. Simpson, at Wayne's request, executed the note and conditional sale contract to secure the balance of the purchase price, applied for and obtained in his name the certificate of title, registration card and liability insurance. He listed the car for taxes. So far as the record discloses Mr. Simpson did not pay one cent on the purchase and maintenance of the car. What he *provided* was credit. His position was the same as if he had become co-maker on a note at the bank as an accommodation for Wayne. It was a service that a friend might have rendered as well. If Wayne defaulted Mr. Simpson had procedures for his protection. The question has been raised in some cases whether, by permitting a minor to use his earnings in purchasing a car, the parent was thereby providing the car. *Foran v. Kallio, supra; Robinson v. Ebert,* 39 P. 2d 992 (Wash. 1955). A father is entitled to the earnings of an unemancipated child. But where a father permits his minor son to work for himself and receive the earnings of his own labor to do with as he wishes, there has been an emancipation with respect thereto. *Jolley v. Telegraph Co.,* 204 N.C. 136, 167 S.E. 575; *Lowrie v. Oxendine,* 153 N.C. 267, 69 S.E. 131; *Ingram v. Railroad,* 152 N.C. 762, 67 S.E. 926.

With respect to emancipation and the purchase of an automobile, the facts in *James v. James,* 226 N.C. 399, 38 S.E. 2d 168, are strikingly parallel to those in the instant case. Plaintiff's evidence tended to show

that a minor lived in his father's home as a member of the household but worked elsewhere and was permitted to receive and use his wages as his own, he bought a Ford and made the down payment by transfer of his old Chevrolet and some cash, his father executed the credit papers and took title in his name, the car was kept at his father's home, he, the son, paid the installments and the credit papers were delivered to him when the indebtedness was fully paid. Thereafter, the son married and was killed in service in World War II. His father claimed ownership of the automobile. The son's widow claimed it as an *inter vivos* gift from the son, and brought this suit for its possession. The father testified that he had fed and clothed his son, he, the father, bought the car and paid one-half the cost and made repairs, and the credit papers were delivered to him when final payment was made. There was judgment for plaintiff, widow. This Court granted a new trial on grounds not pertinent here. On the question of emancipation, the Court said: ". . . (T)he defendant argues that during the period covered by the installments alleged to have been paid by his son, the latter was a minor and that defendant was by law entitled to his earnings. If that principle can be extended to property purchased by the earnings of the son under the circumstances here outlined, the fact that the father, with the full knowledge of the facts and acquiescence therein, permitted the expenditure and purchase, if the evidence should so disclose upon a second trial, may, with other pertinent evidence, be taken into consideration upon the question of emancipation." In the case at bar the facts are not in dispute. Mr. Simpson permitted Wayne to receive his earnings and did not restrict Wayne in the use thereof. It was Wayne's decision to buy the car, he negotiated all of the terms of purchase. If the question of emancipation is pertinent here, which is extremely doubtful, there was, under the undisputed facts, an emancipation *pro tanto*.

We are of the opinion that Mr. Simpson did not provide the automobile. His part in the transaction was only incidental and secondary. His acts amounted to an accommodation, an extension of credit. The decision to purchase and acquire the car was made by Wayne. The transaction was Wayne's idea, he managed it and took responsibility for it. In order to qualify as a provider under the family purpose doctrine one must be a principal mover, one who intends to provide for another or others the particular thing, the automobile, and takes steps on his own responsibility to see to the consummation of the transaction, and contributes substantially of his own means toward that end without expectation of reimbursement or compensation. The court did not err in failing to submit the second issue to the jury on

the theory of "control or right to control," apart from ownership in Mr. Simpson. There was ample evidence to warrant the court in submitting the issue on the theory of ownership by Mr. Simpson, especially in the light of G.S. 20-71.1. The court did so present the matter. The jury has determined the question.

It was suggested that the decision we have reached would overrule *Tart v. Register, supra; Elliott v. Killian,* 242 N.C. 471, 87 S.E. 2d 903, and *Goode v. Barton, supra.* These cases are admittedly of the borderline variety, but they are distinguishable from the case at bar. In the *Tart* case, the driver of the car at the time of the accident was a minor. The car was given her by her mother and uncle as a graduation gift. She, the minor, worked and earned wages, bought the gas and oil for the car and paid for the upkeep, drove the car to and from work and wherever she pleased without special permission of her mother, in whose household she lived as a member of the family. The title was in the mother's name. The mother had a car of her own but also used the daughter's car at times. We held the evidence sufficient to go to the jury as to the liability of the mother under the family doctrine. It will be observed that the mother *provided* the car for the use of the daughter, and the mother also *used* the car without the specific consent of the daughter. In *Elliott* a minor, member of his father's household, purchased a car and made a part of the down payment—his father paid a part. His father executed credit papers, took title and insurance in his, the father's, name, paid part of the insurance premiums, paid some of the installments on the note, and drove the car at times. The car was also used at times for the benefit of other family members. Obviously there was evidence that the father was a principal in *providing* the car and exercised *control.* In *Goode* the minor son of the adult defendant was a student at the University. The car was purchased by the father, with funds belonging to the son. The title certificate was in the name of the father. The car was *maintained* with funds provided by the father.

At best the family purpose doctrine is an anomaly in the law. This Court was reluctant to adopt it initially. As the use of motor vehicles increased the Court gradually expanded the application of the doctrine. We are not disposed to extend the doctrine in this State beyond the limits already reached. *Grindstaff v. Watts,* 254 N.C. 568, 574, 119 S.E. 2d 784. The importance of the doctrine in North Carolina has been greatly reduced by the Financial Responsibility Acts. G.S., Ch., 20, arts. 9 and 9A. See 38 N. C. L. Rev. 249, footnote 4.

(2). This brings us to a consideration of plaintiff's exceptions bearing upon the third issue, McCants' negligence.

McCants offered no evidence. Over the plaintiff's objection, followed by a motion to strike, the court permitted the investigating officer to testify on cross-examination, in answer to a question by counsel for Simpson, as follows:

"Mr. McCants said that he was proceeding up a hill behind a car, which he estimated about eight car lengths behind this vehicle. (He said) 'suddenly I was aware of the vehicle coming over the hill from the opposite direction meeting us. He was on his side and everything seemed O. K. until the car ahead of me swerved right toward the ditch, and I realized there was a second vehicle approaching over the hilltop, and in my lane. This pair of headlights approaching seemed to be even to the right of the center of my lane. It all happened so suddenly that I don't recollect having time to swerve toward the ditch. I think that the fact that his headlights were so far over in my lane I could not swerve right'."

Thereafter, without objection, the officer said:

"Mr. McCants indicated that he was following behind the Buie vehicle proceeding in a southerly direction proceeding up a hill behind a car; that the car in front swerved to the right toward the ditch, then he saw there was a second vehicle ahead of him and that the vehicle ahead of him was coming towards him. . . . My report indicates that Mr. McCants noticed the danger of the accident one hundred feet ahead and that he was going fifty miles per hour at that time. Mr. McCants told me he was going approximately fifty miles per hour at the time of the collision."

J. L. Jones, a witness for plaintiff, also testified without objection:

"He (McCants) told me he was following the taillights of a car and they disappeared and the headlights was right in his face, and that he did not have time to put on brakes."

The patrolman's recitation of McCants' narrative of events preceding the accident, to which plaintiff objected, was clearly incompetent as hearsay. Since McCants did not testify, it was not corroborative. It was not an admission against his own interest; it was a self-serving declaration which, if true, completely exonerated McCants of any blame for the accident. Although offered by the defendant Simpson by way of cross-examination, it did not tend to exonerate Simpson of negligence; it tended only to contradict plaintiff's case against Mc-Cants. *Brothers v. Jernigan,* 244 N.C. 441, 94 S.E. 2d 316; Stansbury:

North Carolina Evidence, 2d Ed. ss. 140, 167; 4 Wigmore on Evidence, 3d Ed., s. 1048.

However, the substantially similar statements made by McCants thereafter admitted without objection cured the error. Strong, North Carolina Index, Appeal and Error, s. 41; *Hall v. Atkinson,* 255 N.C. 579, 122 S.E. 2d 200. The other exceptions relating to the exclusion of evidence have been carefully considered. They are without merit.

The charge of the court, when read contextually, properly presented the law applicable to plaintiff's contention that McCants was following the Buie car too closely without keeping a proper lookout. On all the evidence, the jury concluded that the negligence of young Simpson in attempting to pass the tractor-trailer in the face of oncoming traffic was the sole proximate cause of this unfortunate collision. As to the defendant McCants, plaintiff has failed to show any prejudicial error in the trial below.

In the trial below we find

No error.

SHARP, J., *dissenting* as to the defendant Eddie Martin Simpson. The family purpose doctrine has been stated and restated many times by this Court and, collectively, the cases define it as follows: Where the head of a household owns, keeps, provides, or maintains an automobile for the convenience and pleasure of his family, he is liable for injuries caused by the negligent operation of the vehicle by any member of his family who is using the vehicle for the purpose for which it was provided. *Watts v. Lefler,* 190 N.C. 722, 130 S.E. 630; *Grier v. Woodside,* 200 N.C. 759, 158 S.E. 491.

The necessity of affording greater protection to the ever increasing number of persons injured on our highways originated the family purpose doctrine. The rationale is that a father, or other head of a household who has provided an automobile for the pleasure and convenience of his family, has made their transportation for this purpose his business, and the family-member operator is regarded as representing the family-member provider in such use. The result puts the financial responsibility of the *paterfamilias* behind the vehicle he has furnished for his family's use while it is being thus operated. Dependent members of a family are most often financially irresponsible and the minor members, like Wayne Simpson in this case, unable to obtain adequate insurance coverage.

Under the pleadings and evidence, as the opinion makes clear, Mr. Simpson can be held liable in this case only if the family purpose doctrine is applicable to the Chevrolet which Wayne was operating

at the time he negligently injured the plaintiff. The facts relating to its purchase, title, and use are fully set out in the majority opinion and are not in dispute. Therefore, the legal consequences to Mr. Simpson of Wayne's negligence would be the subject of a peremptory instruction to the jury.

It is established that liability under the family car doctrine does not depend upon ownership of the automobile if it is subject to the control of the head of the household. Therefore, the fact that Mr. Simpson never attempted to control either the car or the comings or goings of his son is not determinative of his legal liability for plaintiff's injuries. "The test is not who owns the vehicle but *control or the right to control.*" (Italics mine). *Griffin v. Pancoast,* 257 N.C. 52, 125 S.E. 2d 310; *Matthews v. Cheatham,* 210 N.C. 592, 188 S.E. 87; *Goode v. Barton,* 238 N.C. 492, 78 S.E. 2d 398; *Elliott v. Killian,* 242 N.C. 471, 87 S.E. 2d 903; *Tart v. Register* and *Flowers v. Register,* 257 N.C. 161, 125 S.E. 2d 754. Therefore, the decisive question here is whether Mr. Simpson had the right to control the use of the Chevrolet which Wayne was driving on the occasion in question.

This right is in no wise dependent upon his right to control his minor son and, under this evidence, his liability for Wayne's negligent operation of the automobile would have been unchanged had Wayne been an adult. Of course, in the exercise of his parental authority, Mr. Simpson did have the right to control Wayne's use of the automobile. Whatever the actualities, the *legal* right of a parent to control his minor child is in no degree diminished or nullified when the child becomes the owner of an automobile. "A parent can, and often should, forbid his minor child to use an automobile . . . the entire ownership of which may rest in the minor." *Robinson v. Ebert,* 180 Wash. 387, 39 P. 2d 992. Certainly, the right to control his child does not give a father the unrestricted right to control the child's property. Because a father could forbid his son to drive the son's car on a Saturday night, it does not follow that he could legally require the son to turn the car over to another member of the family for the evening. However, in this case, we are not concerned with the liability of a father for the tort of his son while operating an automobile owned and maintained *solely* by the minor son. In such a case this Court has held the family purpose doctrine inapplicable. *Griffin v. Pancoast, supra.*

Here, Wayne kept the keys to the Chevrolet but his father held the legal title to it. The registration card and the insurance were in Mr. Simpson's name. He listed it for taxes in his name. Although Wayne had made the down payment, Mr. Simpson had primarily obligated himself to pay $1,754.09, the balance of the purchase price due in the

fall of 1961. The holder of the note and conditional sales contract securing that balance certainly looked to Mr. Simpson as the principal obligor and not as an accommodation endorser. Wayne's only hope of paying for the car was his expectation of a profitable tobacco crop in 1961. However, his 1960 crop had netted him only four hundred dollars.

In the most practical sense, Mr. Simpson had *provided* this automobile for his son's pleasure and convenience and had made it possible for him to operate it upon the highways of the state. To hold otherwise is to be unrealistic. Without his father's credit and permission, Wayne could neither have acquired the automobile, maintained it, nor kept it at his father's home where he lived and was supported as an unemancipated child. Indisputably, Mr. Simpson wanted his son to enjoy the status and convenience which the unrestricted use of an automobile gives a teenager today. Therefore, Wayne's operation of the vehicle for that purpose became Mr. Simpson's business when he provided his son with the use of a Chevrolet registered in Mr. Simpson's name, insured in his name, and obtained with his credit. In my opinion, as long as Mr. Simpson allowed title to the automobile to remain in his name for that purpose, he had the right to control it even though equitably he and Wayne were joint owners of the vehicle.

"The fact that a parent has title to a motor vehicle is, in and of itself, sufficient to justify the application of the family purpose doctrine where the doctrine is otherwise applicable, even though the vehicle has been entirely paid for by the child in question, and the child has the beneficial ownership thereof." 8 Am. Jur. 2d, Automobiles and Highway Traffic § 590.

It does not take a vehicle out of the scope of the family car doctrine that it was provided for one member of the family alone. *Goode v. Barton, supra.* Surely, if a wealthy father with eight children living in his household provided an automobile for each child, it could not be successfully contended that each car did not come within the family purpose doctrine. This doctrine is not restricted to a single car.

The evidence in this case illustrates graphically the factors which originally brought the family purpose doctrine into being as an instrument of public policy. 38 N.C.L. Rev. 249; McCall, The Family Automobile, 8 N.C.L. Rev. 256. It suggests that the abdication by parents of the right and duty to control their teenage children, whom they enable to acquire automobiles which they cannot afford and lack the discretion to operate safely, may be the explanation of the following statistics furnished by the North Carolina Department of Motor Vehicles:

In 1960, 32.11 percent of all drivers involved in motor vehicle accidents in this State were in the 16 through 24 age group. Nationwide, the percentage for this age group was 28.86 percent. In 1961, persons under 20 years old composed 6.64 percent of the drivers in this State but they had 14.29 percent of the accidents. More drivers in the 16 to 20 age bracket were killed than in any other. In the nation, traffic accidents are the leading cause of deaths among persons between the ages of 15 and 24.

Since this Court first recognized it in *Linville v. Nissen,* 162 N.C. 95, 77 S.E. 1096 (1913) (See *Griffin v. Pancoast, supra,* p. 55) it has said many times that the family purpose doctrine is "firmly embedded in the law of this state." *Grindstaff v. Watts,* 254 N.C. 568, 119 S.E. 2d 784; *Ewing v. Thompson,* 233 N.C. 564, 65 S.E. 2d 17; *Elliott v. Killian, Goode v. Barton, supra.* However, the majority now declares that the doctrine is an anomaly in the law which the Court is not disposed to extend; that the Court was reluctant to adopt it initially; and that its importance has been greatly reduced by the Financial Responsibility Act. The plaintiff in this case, made a paraplegic by the gross negligence of Wayne, cannot be expected to agree. The insurance on Wayne's Chevrolet was an assigned risk "because Wayne, the principal driver, was a minor." Five thousand dollars was the limit of the coverage.

To hold Mr. Simpson liable would not extend the doctrine beyond the limits we have already reached. This case comes within the rule of *Tart v. Register* and *Flowers v. Register, Elliott v. Killian,* and *Goode v. Barton, supra,* and it cannot be distinguished from *Register.* In *Register,* the mother held title to the automobile which she and another had given her minor daughter. The daughter bore the expense of the car. The fact that the mother occasionally used the daughter's car instead of her own, could make no difference in her liability for the daughter's negligent operation of it. In this case, can it be doubted that Mr. Simpson would have used the Chevrolet had he ever needed an automobile at a time when his Oldsmobile was unavailable? It is noted that in this case Mr. Simpson's credit is *presently* providing the car for Wayne whereas in *Register* the mother's provision was a *fait accompli* when she gave the car (completely paid for so far as the record in that case reveals) to the daughter.

The majority opinion defines a provider as follows: "In order to qualify as a provider under the family purpose doctrine one must be a principal mover, one who intends to provide for another or others the particular thing, the automobile, and takes steps on his own responsibility to see to the consummation of the transaction, and contributes

SMITH *v.* SIMPSON.

substantially of his own means toward that end without expectation of reimbursement or compensation."

This definition appears to have been tailored to fit the mother in *Register*. It fails to fit Mr. Simpson only because it includes the requirement that a provider must not expect reimbursement or compensation. Thus does the majority seek here to avoid the result of *Register*. It is assumed that by the descriptive phrases, "a principal mover" and one who "takes steps on his own responsibility," are not meant to suggest or require that the idea of purchasing the car must *originate* with the provider. No doubt many a father, who never thought to make such an expenditure, has succumbed to the importunities and blandishments of a son or daughter who thought the family needed another car.

Certainly, in a legal sense, Mr. Simpson became the principal mover and he took steps on his own responsibility when he consummated the purchase of the Chevrolet by signing the note and conditional sales contract to secure the balance due on the automobile, when he had the title issued in his name and applied for the license, and when he applied for the insurance—an assigned risk. Incidentally that insurance policy would cover Wayne, not as the owner of the car, but because he was operating it with the consent of the named insured, Mr. Simpson!

Under the majority's definition of a *provider*, in the absence of an admission, it will be extremely difficult for a plaintiff ever again to prove that an automobile registered in the father's name, but used by a son for his own pleasure and convenience, is a family purpose car. All that the solvent, inadequately insured father need do to avoid liability is to assert that he paid for the car, took title in his own name, and made it available for the use of his teenage son (an assigned risk!) upon the boy's promise to reimburse him some day. The law would not hold the son to such a contract. The father could no more recover the purchase price of the car from a minor son who chose to disaffirm the contract than could a dealer who had sold an automobile to a minor. Should this Court permit such an unenforceable contract to nullify the family purpose doctrine which was created in the public's interest to protect it from financially irresponsible minors? I do not think so.

In failing to make the application of the family purpose doctrine dependent upon the father's right to control the automobile being operated by Wayne as distinguished from his beneficial ownership therein, it is my opinion that the trial judge committed error requiring a new trial as to the defendant Eddie Martin Simpson. I concur in the majority opinion that there is no error in the trial as to McCants.

PARKER & BOBBITT, JJ., join in the dissenting opinion.