[No. 31384. Department One. July 13, 1950.]

RUTHE MCGINN, *as Executrix, Respondent,* v. JOHN F. KIMMEL *et al., Appellants.*[1]

[1]Reported in 221 P. (2d) 467.

*Witherspoon, Witherspoon & Kelley*, for appellants.

*Robertson & Smith* and *Donald L. Burcham*, for respondent.

GRADY, J.—The respondent brought this action against appellants to recover damages arising out of the death of her husband. The jury returned a verdict in favor of appellants. Respondent moved for a new trial, which the court granted by a general order.

Francis X. McGinn, the deceased, was driving his automobile in a westerly direction on a public highway. John F. Kimmel was driving an automobile belonging to his father, George L. Kimmel, in an easterly direction on the same highway. The two automobiles collided, causing the death of decedent. This action was based upon the negligence of John F. Kimmel in the manner in which he drove the automobile, and liability of George L. Kimmel was based upon the family purpose doctrine.

The questions presented for our decision are: (1) whether the family purpose doctrine applies; (2) whether the court erred in not holding as a matter of law that the evidence was insufficient to take the case to the jury, and (3) whether the court erred in granting respondent a new trial.

George L. Kimmel, his wife Margaret, two sons, and two daughters resided together as a family. The parents became the owners of an automobile, which was used by the father and his son John. The other members of the family did not drive the car.

After John F. Kimmel returned from military service, he was married, left the family home, and established and maintained one of his own. He did not own an automobile, but occasionally used the one belonging to his father. He desired to visit the parents of his wife, and for that purpose secured the permission of his father to use his automobile. The automobile had been left at a service station by George L. Kimmel. His son Ray was employed at that service station, and John F. Kimmel got the automobile from his brother. He then drove to his home, his wife and child and her brother joined him, and they started on the journey. It was on this journey the collision occurred.

■ The family purpose doctrine found its earliest expression by this court in *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N.S.) 59. By that rule, an owner of an automobile becomes liable for damage done by it while being used by members of his family, with either his express or implied consent, for business of such family, or for pleasure. The liability must rest on the relation of agency or service. Pleasure is placed in the same category as family business, and the members of the family who are permitted to drive the automobile are agents. We have been confronted with the application of the doctrine in a large number of cases, from which it will be observed there has been a continuous struggle over the extension or restriction of its coverage. The question presented is whether the son who drove the automobile was such a member of George L. Kimmel's family as to constitute him an agent when making his pleasure trip to visit his wife's parents.

In *Carlson v. Wolski*, 20 Wn. (2d) 323, 147 P. (2d) 291, we quoted with approval the following definition:

"The family group is not necessarily confined to persons related to the owner. It embraces all the members of the collective body of persons living in his household, for whose

convenience the car is maintained and who have authority to use it."

It is not necessary for us at this time to say that this definition is all-inclusive, as a family group might include a child who temporarily resided without the family roof and was permitted to use the parents' automobile; but it is our opinion that, when a child leaves the family circle and establishes a home of his own, he ceases to be a member of the family within the meaning of the family purpose doctrine; and when he uses his parents' automobile with their consent and for his own pleasure, he is a borrower of it and not an agent.

The other aspect of the question of agency is that, when the respondent showed that the automobile belonged to the senior Kimmel and was being driven by another person, either a presumption arose or it could be inferred that the driver was his agent. From what has been said by courts and text writers about presumptions and inferences, the purposes they serve and how they may be met and overcome, trial judges and lawyers have encountered much difficulty. This becomes apparent when we read our opinions in *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020; *Bradley v. Savidge, Inc.*, 13 Wn. (2d) 28, 123 P. (2d) 780; *Carlson v. Wolski*, 20 Wn. (2d) 323, 147 P. (2d) 291, and *Hanford v. Goehry*, 24 Wn. (2d) 859, 167 P. (2d) 678, and the cases cited in such opinions. However, if we are careful and discriminating in our use of words there need be no serious confusion.

The word "presumption" is used many times without regard to its two-fold aspect. Situations arise where the party having the burden of proof of a fact has no evidence owing to the death or absence of witnesses. The necessities of the case warrant the indulgence in a presumption of the existence of that fact. If it is a presumption of law, then it must be regarded as conclusive and cannot be repudiated or defeated; but if it is one of fact, then it can be met and overcome by evidence. We find frequent expressions to the effect that the presumption is a rule of law which serves

only to carry the plaintiff past a motion for a nonsuit, and that it disappears and becomes ineffective for any purpose when it is met by any substantial evidence; also, that it does not have the force of evidence; but merely gives rise to a procedural rule and casts upon the defendant the burden of going forward with evidence to meet the presumption.

The question next arises whether the presumption may be overcome by the testimony of interested witnesses, or must it be overcome, if at all, by the testimony of disinterested witnesses; also, whether the conclusion that it has been overcome is for the court to determine as a matter of law, or for the trier of fact. The problem has been solved so far as the agency question is concerned by the foregoing cases. We have regarded the presumption as one of fact. We have used the words "presumption or inference of fact" in the *Bradley* and *Carlson* cases, and *"prima facie* case" in the *Abercrombie* case and others. We used the words "double-barreled presumption" in the *Hanford* case, where it appeared from the evidence submitted by the plaintiff that the automobile was owned by one person and the driver was in his employ, as distinguished from other cases where there was proof of ownership, but the driver was not an employee.

We gather from the authorities on the subject that a presumption of fact does not have for its basis another existing fact or facts, but is indulged in to supply that which one would ordinarily expect to exist, but for which there is no actual affirmative proof; while an inference is drawn from some existing fact or facts. The difference is many times somewhat shadowy, and not of much practical significance. The thought has been advanced that, in the case of a rebuttable presumption, it ceases to have any effect as soon as it is met by any evidence to the contrary; and as to the inference, the thought has been expressed that the inference and the controverting evidence must be weighed one against the other. However, we discussed the manner in which both the presumption and inference of fact may be met in *Carlson v. Wolski, supra,* and said:

■ "Because of the apparent conflict in some of our decisions as to whether or not the presumption of agency which arises on proof of ownership of an automobile is overcome by the testimony of interested witnesses, this court, in *Bradley v. S. L. Savidge, Inc.*, 13 Wn. (2d) 28, 123 P. (2d) 780, exhaustively reviewed the decisions of this and many other jurisdictions, and then announced the rule that, while the presumption or inference of fact arising from proof of ownership of an automobile may be overcome by *competent evidence* from either interested or disinterested witnesses, nevertheless, to overcome such presumption, the testimony must be uncontradicted, unimpeached, clear, and convincing. If the court should determine that the testimony is of that degree and character, and if such testimony is not met by controverting evidence on the part of the plaintiff, the case must be determined upon motion for a directed verdict.

"If, on the other hand, the trial court should be of the opinion that, whatever may be the value of defendant's evidence, it has not attained the degree and character required for the purpose of a directed verdict, the case should be submitted to the jury, to be decided by it on all the evidence then before the court."

By treating a presumption of fact and an inference on the same basis with reference to how they may be met and overcome, we have clarified much confusion and have adopted a rule which is sound, logical and practical.

We conclude as a matter of law that the family purpose doctrine is not applicable to the facts of this case, and that the relationship of principal and agent did not exist between the appellants.

At the close of the respondent's evidence, the appellants moved for a nonsuit and dismissal of the action, and at the close of all evidence moved for a directed verdict. The motions were denied.

There is evidence in the record which would justify the trier of fact in finding that the collision between the two automobiles occurred about ten o'clock in the evening. There was a heavy fog at the time. Darkness and the foggy condition were such that the drivers of automobiles found it very difficult to find their way. The usual yellow center

line was scarcely visible, not only because of the fog, but the yellow paint had faded. Drivers found it necessary to use the shoulders of the road as a guide. The pavement was eighteen feet in width, with a four to five foot shoulder on each side. Ditches on each side increased the hazard.

A deputy sheriff testified that the driver of the Kimmel car told him he saw lights ahead and immediately turned to his left in an effort to avoid a collision with the automobile driven by the decedent. After the impact, the two automobiles came to rest, each at an angle. Their front ends were from one to two feet apart. The Kimmel car was facing in a northeasterly direction, with its front wheels on the north side of the center line and its rear wheels on the south side. The position of the McGinn car was much more northerly and southerly and at a slight angle facing northwesterly, the front wheels being on the north side of the road and the rear wheels on the southerly side. The front ends of the automobiles were badly crushed, from which an inference could well be drawn that one or both of them were traveling at a rather high rate of speed.

The testimony with reference to the position of the two automobiles after the impact is conflicting, but in considering the motions for nonsuit and for a directed verdict, we must view the evidence in a light favorable to respondent. There were six men riding in the McGinn car, and three adult persons and a baby riding in the Kimmel car. The decedent driver and one occupant in the front seat of the McGinn car died shortly after the collision. The other occupants were not available and were not called as witnesses. Mrs. Kimmel did not recall any of the events immediately connected with the accident, but testimony was given by John F. Kimmel and the occupant of the rear seat of the Kimmel car. The sheriff and deputies reached the scene of the collision before the automobiles had been moved.

It is our opinion that the testimony given, and the justifiable inferences to be drawn from all of the evidence, including the photographs taken of the damaged cars, were

sufficient to warrant submitting to the jury the questions of the negligence of the driver of the Kimmel car and contributory negligence of the driver of the McGinn car, and that the court did not err in denying the motion for a directed verdict.

We are in accord with the view taken by the trial court that appellants were not entitled to a judgment of nonsuit because of the prosumption of fact that the decedent exercised reasonable care under the circumstances in the manner in which he drove his automobile. In view of the fact that a new trial must be had, we do not deem it proper to discuss or decide whether the evidence submitted by appellants was sufficient to overcome such presumption either as a matter of law or fact; but for the assistance of the trial court and counsel, we now state that in the event a like situation arises the above quotation from *Carlson v. Wolski*, 20 Wn. (2d) 323, 147 P. (2d) 291, should furnish a sufficient guide.

We gather from the written opinion of the trial judge that the motion of the respondent for a new trial was granted upon the ground of newly discovered evidence, and also that, considering the entire evidence, he was satisfied it would be an abuse of discretion to refuse to grant a new trial. The order granting the motion for a new trial was a general order and not based upon any specific ground. In *Coppo v. Van Wieringen, ante* p. 120, 217 P. (2d) 294, we held that when a general order granting a new trial is made, we ordinarily must assume that it was, or at least may have been, granted in the exercise of the inherent power of a trial court to grant a new trial on the ground that substantial justice had not been done. We quoted with approval what was said in *Henry v. Larsen*, 19 Wn. (2d) 690, 143 P. (2d) 841, to the effect that, in the case of a general order, our inquiry was limited to the determination of the question whether the evidence was sufficient to take the case to the jury; and that unless we could say in such case that the verdict of the jury was, as a matter of law, the only verdict that could be rendered, the order granting the new trial must be affirmed. We have heretofore pointed out that

the evidence was sufficient to take the case to the jury. We cannot say that the verdict of the jury for the defendants was the only one that could be rendered.

The order granting respondent a new trial is affirmed as to John F. Kimmel and Joyce P. Kimmel and reversed as to George L. Kimmel and Margaret P. Kimmel, and the case is remanded for the entry of a judgment of dismissal as to them. The respondent will recover costs and disbursements against appellants John F. Kimmel and wife, and appellants George L. Kimmel and wife will recover costs and disbursements against respondent.

SIMPSON, C. J., BEALS, and DONWORTH, JJ., concur.

SCHWELLENBACH, J. (concurring in the result)—I agree with the majority that the family purpose doctrine is not applicable to the facts of this case, but I think the statement that "when a child leaves the family circle and establishes a home of his own he ceases to be a member of the family within the meaning of the family purpose doctrine," is too broad. Let us assume that a child marries, leaves the family circle, and establishes a home of his own. Then he comes back to visit his folks, stays at their home, and, to make his visit more enjoyable, they let him take the family car. I believe that under those circumstances the car would be used for a family purpose.