**Roy DANIEL et al., Appellants,**

**v.**

**Doke PATRICK, Appellee.**

Court of Appeals of Kentucky.

March 18, 1960.

W. A. Johnson, J. K. Wells, Paintsville, for appellants.

G. C. Perry, III., W. B. Hazelrigg, Paintsville, for appellee.

PALMORE, Judge.

This is a personal injury action involving a pedestrian, a motorcycle and an automobile. The pedestrian, Patrick, recovered $15,000 in damages separately allocated by the jury in the amounts of $5,000 each against Tom Roy Daniel (driver of the motorcycle), Preston (driver of the car), and Roy Daniel (owner of the car), and the further sum of $600 for hospital expenses awarded against the three defendants jointly and severally. Liability of Roy Daniel, the father of Tom Roy Daniel, was based on the family purpose doctrine. We are affirming the judgment against Tom Roy Daniel and Preston but reversing as to Roy Daniel for the reason that the evidence of

family purpose was insufficient to support a verdict against him.

In August of 1956 Tom Roy Daniel, a member of the U. S. Navy, was on furlough and visiting his father, Roy Daniel, at or near Tutor Key in Johnson County. On the afternoon of August 13 he had his father's automobile and met up with Preston, a friend, who owned a motorcycle. Both boys were minors. Tom Roy wanted to ride the motorcycle, so he turned the car over to Preston and they started from Paintsville toward Tutor Key, Tom Roy driving the motorcycle and Preston some 30 to 50 feet directly behind him in the car. On the way Tom Roy lost control of the motorcycle and ran onto the shoulder to his right, striking Patrick, who was walking along the road some 7 or 8 feet off the blacktop and in the same direction as the boys were traveling. The shoulder of the road was wide on the right side of the road at this point but, according to Patrick, was too narrow on the left side for safe walking. There is no suggestion of negligence on the part of Patrick, and the evidence of Tom Roy Daniel's negligence is conclusive.

The problems in this case arise from Patrick's testimony that immediately after he was knocked flat by the motorcycle the automobile ran over his left arm and shoulder. In addition to the question thus introduced as to the responsibility, if any, of the owner of the car, the appellants, who deny that Patrick was struck by the car at all, contend that it would have been physically impossible for him to see the car after being knocked down by the motorcycle. Evidently the motorcycle diverged so far off the blacktop as to pass to the right of Patrick, so that when struck he was thrown toward the highway, falling on his belly and the left side of his face and lying at an angle to the road, head toward the direction in which he had been traveling and feet angling outward away from the road. In this position his head and arm still were not on the paved surface. He contends that the motorcycle ran over his legs and the car immediately ran over his left arm and shoulder, and that he saw them both.

■ Conceding for the sake of argument that Patrick's face was turned in the opposite direction the instant before he allegedly was struck by the car, he was still able to move his head. Moreover, he recalls a few moments of consciousness after the double impact, and, however unlikely, it is certainly within the realm of possibility that he saw the car as it passed over him or immediately thereafter. Coney Island Co. v. Brown, 1942, 290 Ky. 750, 162 S.W.2d 785, cited by appellants, was a case in which the plaintiff's theory of an accident was proved physically impossible. In Lambert v. Miller's Adm'r, 1939, 277 Ky. 64, 125 S.W.2d 1019, the testimony of two witnesses was at variance with facts admitted by the party for whom they were endeavoring to testify, and was so contradictory as to be obviously untrue. Those cases, we think, are clearly distinguishable from this one. Since the physical circumstances do not manifest his story to be impossible, Patrick's categorical statement that he saw' and felt the car strike him was sufficient to present a jury question.

■ During the questioning of their own medical witness toward the end of the trial the appellants discovered in his hospital's file a letter from the United Mine Workers of America, to whom a medical bill had been submitted, acknowledging receipt of an accident report signed by Patrick in which he is said to have reported that he had been struck "by either a motorcycle or an automobile" and did not know "who was responsible for the accident." The trial court very properly overruled appellant's offer to introduce this letter as evidence, whereupon appellants moved, on the ground of surprise, that the swearing of the jury be set aside and the case continued in order to avail them an opportunity to procure the accident report itself. The motion was overruled.

As the appellants concede, the trial court is possessed of wide discretion in respect

to declaring a mistrial on account of surprise. 53 Am.Jur. 679 (Trial, § 967). At least three of appellants' witnesses testified that they had heard Patrick say at the hospital that he did not know what hit him. Therefore, the accident report would have been cumulative. Moreover, the alleged statement that he did not know who was responsible for the accident would not necessarily mean that he did not know whether either or both of the vehicles had struck him. In Louisville & N. R. Co. v. Bell, 1909, 134 Ky. 139, 119 S.W. 782, a suit to recover for damages sustained in several fires, the plaintiff testified as to specific dates which he had not stated in his petition and had been unable to furnish when called upon to do so in response to a motion, and it was held that the defendant was entitled to a continuance. After obtaining the information it was the plaintiff's duty to make a timely disclosure, and his failure to do so put the defendant at a disadvantage. There is, however, no such situation in the instant case. On the contrary, if there was any fault in the failure to get the information before the trial, it was on the appellants themselves, whose witness had access to the hospital file. Far from its being an abuse of discretion for the court to overrule the motion, we are inclined to think it would have been an abuse to do otherwise.

The third instruction given the jury followed the form set forth in § 144, Stanley's Instructions to Juries, and authorized recovery against Roy Daniel, the owner, if the car was being operated by Preston "in the presence of and under the control of Tom Roy Daniel, with the consent or approbation of the defendant, Roy Daniel." The fourth instruction, making no mention of Roy Daniel, specified the damages recoverable against either Preston or Tom Roy Daniel, or against both of them, and further directed a separate assessment· thereof as between them in the event the jury should base its verdict on the separate collisions with the motorcycle and the car. There were no objections to the instructions, and the verdict was as follows:

"We the jury agree for the plaintiff Doke Patrick against defendant Tom

Roy Daniels $5,000 and Roy Daniels $5,000 and Dean Preston $5,000 pay to Doke Patrick $15,000 this for damage to said plaintiff.

"We the jury agree that said defendants pay the Paintsville Hospital $600. Six Hundred Dollars."

Since we are of the opinion that the family purpose doctrine cannot be applied under the facts of this case it is not strictly necessary that we discuss whether a separate assessment of damages against Roy Daniel was authorized by the instructions. However, it is evident from this and other recent cases that the matter of allocating damages among joint defendants requires clarification.

As among joint tortfeasors the proper instruction should authorize recovery against the defendants either jointly in a single sum or separately in sums of different amounts. See KRS 454.040; Baldwin v. Wiggins, Ky.1956, 289 S.W.2d 729; Central Passenger Ry. Co. v. Kuhn, 1888, 86 Ky. 578, 6 S.W. 441, 9 Ky.Law. Rep. 725; Stanley's Instructions to Juries, §§ 251a, 286. But this rule does not apply as between master and servant, because the master's liability is purely derivative. Baldwin v. Wiggins, supra. (Though the form of instruction No. 5 in § 384 of Stanley's Instruction to Juries is correct as to joint tort-feasors it is erroneous as to master and servant.) Hence it would not apply in the case of imputed liability under the family purpose doctrine. The acts of Preston and Tom Roy Daniel, even though they be considered as separate and independent rather than joint, concurred in injuring the appellee (cf. Murphy v. Taxicabs of Louisville, Inc., Ky., 330 S.W. 2d 395), and it would therefore have been correct to instruct simply that if the jury should find against both of them the award might be made in the form of a single sum jointly or different sums separately. This particular instruction directed a separation, which was erroneous, but there was no objection. The attack is made on the verdict as not following the instruction, but we think it is clear that, except

possibly for the $600 item, the verdict was not contrary to the instructions as to the appellants Preston and Tom Roy Daniel. With respect to the appellant Roy Daniel, however, the instruction did not authorize a separate allocation (being, in fact, silent as to what damages might be assessed against him), and the verdict for $5,000 against him was contrary to law.

We come now to the crucial question of the case, which concerns the family purpose doctrine. One of the indispensable elements of that doctrine is that the person on whom it is sought to fasten liability owns, maintains, or provides the vehicle for the general use, pleasure and convenience of the family. 60 C.J.S. Motor Vehicles, § 433b, p. 1069; 5A Am.Jur. 604 (Automobiles and Highway Traffic, § 601); Blashfield's Cyclopedia of Automobile Law and Practice Vol. 5A, p. 45 (§ 311). Often this element is conceded and is not in issue, in which event an instruction such as the one used in this case (Stanley's Instructions to Juries, § 144) is proper. If, however, there is a question as to whether or not the purpose for which the vehicle was owned, maintained or provided was for the use or convenience of the family, the instruction should be so drawn as to submit that element to the jury. The instruction given in § 144 of Stanley's Instructions is based on cases where the maintenance of the car for a family purpose was not in issue, and it is not appropriate otherwise.

Counsel for the appellant Roy Daniel, owner of the car, has placed primary emphasis on the contention that the family purpose doctrine is inapplicable because Tom Roy Daniel was not present in the vehicle with Preston, but we do not agree. Preston was not a mere bailee of Tom Roy Daniel, but, on the contrary, was driving the car at his special instance and request in order that he, Tom Roy Daniel, might try his hand on the motorcycle. At the least, Tom Roy Daniel was in constructive possession and control of the automobile,

a respondeat superior relationship existing between him and Preston. This court is of the opinion, however, that Roy Daniel was entitled to a directed verdict and, having been denied it, was entitled to a judgment notwithstanding the verdict (as duly requested by motion) for the reason that there was insufficient evidence to present a jury question as to the maintenance of the automobile for a family purpose.

The plaintiff's evidence in chief developed only that the car belonged to Roy Daniel and that Tom Roy was his son. It was not shown that Tom Roy was a minor or even that he customarily made his home with his father. Nonetheless, Roy Daniel's well-founded motion for a peremptory after plaintiff rested was overruled. That Tom Roy Daniel was under the age of 21 was elicited from Preston on cross-examination. The principal evidence bearing on the family purpose doctrine was extracted from Roy Daniel himself, whose testimony was most evasive and unsatisfactory. Tom Roy Daniel did not testify. It is undisputed, however, that Roy Daniel was a coal miner living at the home of his brother, having been divorced from his wife 10 years or so prior to the events of this case. He used the car to go to and from work. At the time of the divorce his wife was awarded custody of the children, including Tom Roy, who never thereafter made his home with the father but came and went "when he wanted to." One witness said that Tom Roy "stayed some with his father, and some with his mother, or his grandfather, one," but the witness did not know where the mother lived. On the night before the accident he stayed at the home of the uncle, where his father was staying. Tom Roy had been there "two or three days, probably." He was out late that night and "probably" had the car. On the morning of the accident he was still asleep in bed when Roy Daniel drove the car to work. Roy Daniel left the car in a churchyard near his place of work, with the ignition key in it, as was his custom. Some time during the day Tom Roy Daniel came and got the car. That

he had the tacit permission of the father to do so is a conclusion which a jury would be authorized to infer from these circumstances. However, we do not think that the possibility of occasional brief visits to a divorced man by his child or children, in the absence of exceptional circumstances, authorizes the conclusion that his personal automobile is in any wise maintained for their use and convenience.

The judgment will not be disturbed on the appeals of Preston and Tom Roy Daniel, but as to the appellant Roy Daniel the cause is reversed with directions to enter a judgment dismissing the action.