GEORGE THOMAS WHITE v. WILLIAM E. VANANDA

No. 7128SC665

(Filed 15 December 1971)

1. Automobiles § 53— driving on wrong side of road

Plaintiff's evidence that the collision in question occurred when defendant's son drove left of the center of the highway made a *prima facie* case of actionable negligence on the son's part.

White v. Vananda

2. **Automobiles § 108— family purpose doctrine — accident in this State — nonresident driver**

The family purpose doctrine as enunciated in this State, rather than as declared in the state of defendant's residence, must be considered in determining if the doctrine is applicable to a collision which occurred in this State.

3. **Automobiles § 108— family purpose doctrine**

Under the family purpose doctrine, the head of a household who owns, keeps, provides or maintains an automobile for the convenience and pleasure of his family is liable for injuries caused by the negligent operation of the vehicle by any member of his family who is using the vehicle for the purpose for which it was provided.

4. **Automobiles § 108— family purpose doctrine — adult child**

The family purpose doctrine is not confined to situations involving parent and minor child but applies with equal force when the child is an adult.

5. **Automobiles § 108— family purpose doctrine — car driven by son in armed forces**

In this action to recover damages for personal injuries sustained in a collision between plaintiff's automobile and an automobile owned by defendant but operated by defendant's son, the fact that at the time of the collision defendant's son was serving in the armed forces and was not dependent upon his father for support does not as a matter of law exclude him from membership in his father's family within the meaning of the family purpose doctrine, and it was for the jury to determine whether at the time of the collision he yet remained within the family group for the purpose of applying that doctrine.

6. **Automobiles § 105— automobile accident — respondeat superior — proof of ownership and registration**

Plaintiff was entitled to have submitted to the jury his action to recover against defendant for personal injuries received in a collision with an automobile driven by defendant's son, where defendant admitted ownership of the automobile driven by his son and conceded that it was registered in his name. G.S. 20-71.1(a) and (b).

APPEAL by plaintiff from *Martin (Harry C.), Judge,* 19 April 1971 Session of Superior Court held in BUNCOMBE County.

Civil action to recover damages for personal injuries sustained by plaintiff in an automobile collision between a car owned and operated by plaintiff and an automobile owned by defendant but operated by defendant's son, William Ronald Vananda. (It appears that William Ronald Vananda died as a result of the collision. His estate is not a party to this litigation.) The collision occurred on the afternoon of 12 May 1968

on U. S. Highway No. 64 in Catawba County at a point approximately one mile west of the city limits of Hickory. At that point the highway is a four-lane highway 52 feet wide, with two lanes for eastbound and two lanes for westbound traffic. There is no median, the lanes being separated only by lines painted on the pavement. The posted speed limit was 55 miles per hour. Plaintiff alleged and offered evidence to show that the collision occurred when plaintiff's automobile, which he was driving westward in the right-hand westbound lane at a speed between 40 and 45 miles per hour, was struck by a 1965 Chevrolet automobile which, while being driven by defendant's son in an eastward direction on Highway 64, crossed over the center line and into plaintiff's lane of travel and struck the left front of plaintiff's automobile, injuring him. The evidence would indicate that plaintiff was the only occupant of his vehicle and that defendant's son was the only occupant of the 1965 Chevrolet.

Plaintiff alleged and defendant admitted that defendant was the owner of the 1965 Chevrolet being driven by his son and that the Chevrolet was registered for the year 1968 with the Department of Motor Vehicles for the State of Tennessee. (The allegation of the complaint admitted by the answer does not make it entirely clear that defendant's vehicle was registered *in the name of the defendant,* but defendant's counsel in their brief state that it was registered in defendant's name.) Plaintiff also alleged, but defendant denied, that: (1) at the time of the accident defendant's son, William Ronald Vananda, was operating the 1965 Chevrolet as the agent of defendant and was acting within the course and scope of his employment; and (2) defendant owned, maintained and provided the 1965 Chevrolet for the general use, pleasure and convenience of his family and particularly his son, William Ronald Vananda, and at the time of the accident defendant's son was using the vehicle for family purposes.

At the trial plaintiff introduced in evidence the deposition of defendant, who testified in substance to the following facts: Defendant lived in Townsend, Tennessee, and engaged in business in Tennessee. William Ronald Vananda was his oldest son, and he had three younger children, all boys, who on 12 May 1968 were respectively 18, 15 and 11 years of age. In September 1966 William Ronald Vananda, after having

attended college for two quarters, volunteered and enlisted in the Marines for a three-year enlistment period. He served in Viet Nam, attained the rank of corporal, and in May 1968 was stationed at Camp Lejeune. He would have been discharged from service in September 1969, at the end of his three-year enlistment period. He was not married. When he had attended college prior to enlisting, his father had provided for his educational expenses. It was his intention to return to college after completing his military service, but in that event he would have had the benefits of the G.I. Bill and his father would not again have provided for his educational expenses. When on leave from military service, he came home and stayed in his father's residence without being required to pay room and board, but his father did not provide for any of his other expenses. About three weeks prior to 12 May 1968 he had been home for an overnight visit and on that occasion had taken his clothes back to camp with him. He next returned home on Saturday, 11 May 1968, getting a ride with friends, and he left home around noon on Sunday, 12 May 1968. He was returning to Camp Lejeune when the collision occurred.

The 1965 Chevrolet which William Ronald Vananda was driving had been purchased new by defendant in 1965 and defendant had had it right up until the time of the accident. It was not used in defendant's business and was purchased by defendant mainly for use by his wife, who used it principally to drive back and forth to work. Defendant's wife participated in selecting the 1965 Chevrolet and in paying for it, and she participated in buying gasoline and providing for it. In May 1968 defendant also had two other cars, a 1956 Chevrolet and a 1961 Ford station wagon. The 1956 Chevrolet had been selected and purchased by William Ronald Vananda, and that was the car he drove when home on leave. On occasion he, as did also the second oldest boy, drove the 1965 Chevrolet by special permission "if they really needed the car for something," but usually they drove the 1956 Chevrolet or the 1961 Ford station wagon. On the occasion the accident occurred, William Ronald Vananda had special permission to use the 1965 Chevrolet, which was a newer automobile, to drive back to camp. At that time he was supposed to return home again in two weeks, and had permission to drive the car to the base and back home again. (In his deposition, defendant testified on direct examination by plaintiff's counsel that he had allowed his son to take the 1965

Chevrolet with him and that his son had defendant's permission to use it on the occasion in question. On cross-examination by his own counsel, defendant testified that arrangements for use of the car on this occasion were made between his son and the boy's mother, defendant's wife.)

At the conclusion of plaintiff's evidence, defendant moved for a directed verdict, and from judgment allowing the motion and dismissing the action, plaintiff appealed.

*Riddle & Shackelford by John E. Shackelford for plaintiff appellant.*

*Van Winkle, Buck, Wall, Starnes & Hyde by O. E. Starnes, Jr.; and Uzzell & Dumont by Harry Dumont for defendant appellee.*

PARKER, Judge.

[1]   Plaintiff's evidence that the collision occurred when defendant's son drove left of the center of the highway made a *prima facie* case of actionable negligence on the son's part, *Lassiter v. Williams,* 272 N.C. 473, 158 S.E. 2d 593; *Anderson v. Webb,* 267 N.C. 745, 148 S.E. 2d 846, and the only question presented by this appeal is whether the evidence was sufficient to require the jury to pass upon an issue as to defendant's responsibility for his son's actions. We think that it was.

[2, 3]   Since the collision occurred in North Carolina, the family purpose doctrine as enunciated in this State rather than as declared in the State of defendant's residence must be considered in determining if the doctrine is applicable under the facts of this case. *Goode v. Barton,* 238 N.C. 492, 78 S.E. 2d 398. In discussing that doctrine, Moore, J., speaking for our Supreme Court in *Grindstaff v. Watts,* 254 N.C. 568, 571, 119 S.E. 2d 784, 787, said:

> "The family purpose doctrine is an anomaly in the law. When the facts essential to invoke the doctrine are established by the verdict or admitted, an irrebutable presumption arises that the family member operator was the agent of the family member owner and acted pursuant to and within the scope of the agency. 'The doctrine is an extension of the principle of *respondeat superior.* . . .' 38 N. C. Law Review, 249, 250. In this State it is not the re-

sult of legislative action, but is a rule of law adopted by the Court."

The doctrine has been stated and restated many times by our Supreme Court "and, collectively, the cases define it as follows: Where the head of a household owns, keeps, provides, or maintains an automobile for the convenience and pleasure of his family, he is liable for the injuries caused by the negligent operation of the vehicle by any member of his family who is using the vehicle for the purpose for which it was provided." Sharp, J., in dissenting opinion in *Smith v. Simpson*, 260 N.C. 601, 614, 133 S.E. 2d 474, 484.

In the present case defendant has admitted ownership of the car which his son was driving. He testified that he provided it for the convenience and pleasure primarily of his wife, but that at times it was also used by special permission by the two oldest boys, who were of an age to drive, "if they really needed the car for something." He testified that his son, William Ronald Vananda, had special permission to use the car for the purpose for which it was being used and on the occasion when the collision occurred. The only real question presented by this appeal is whether, under the facts disclosed by the evidence, the jury could legitimately find that William Ronald Vananda was, at the time of the collision, a member of his father's family for purposes of applying the family purpose doctrine. When the evidence is viewed in the light most favorable to the plaintiff, as it must be in passing upon the correctness of the directed verdict against him, *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396, we think that the jury could so find.

[4, 5] At the outset we observe that while the record does not disclose how old William was at the time of the accident, the family purpose doctrine "is not confined to situations involving parent and minor child. It applies with equal force when the child is an adult," *Smith v. Simpson, supra,* for "the parent is under no more legal obligation to supply an automobile for the use and pleasure of a minor child than he is for the use and pleasure of an adult child." *Watts v. Lefler*, 190 N.C. 722, 130 S.E. 630. Nor do we think that the fact that at the time of the collision William was serving in the armed forces and for the period of his enlistment was not dependent upon his father for support should, as a matter of law, exclude him from membership in his father's family as that group is conceived of in apply-

ing the family purpose doctrine. To so hold would in these times automatically exclude from the family group thousands of young men whose relationship with their parents and within the family group, and whose financial responsibility, has undergone no real change. The case now before us, as indeed every case involving a possible application of the family purpose doctrine, must be considered in the light of its own particular facts. Viewing those facts in the light most favorable to plaintiff, we hold that the son's military service in the present case did not as a matter of law compel the conclusion that he had ceased to be a member of his father's family within the meaning of the family purpose doctrine, and it was for the jury to determine, under proper instructions from the court, whether at the time of the collision he yet remained within the family group for purpose of applying that doctrine. There was here evidence that he did not intend to make the service his career, and that when his duty permitted he returned to his father's home and resumed his position as a member of the household. While we find no case in which the Supreme Court of North Carolina has passed upon the precise question here presented, the holding of the Supreme Court of Georgia in *Dunn v. Caylor*, 218 Ga. 256, 127 S.E. 2d 367, seems entirely consistent with the family purpose doctrine as enunciated in our own State. In that case the Court said:

> "Every case concerning the application of the family purpose doctrine must stand upon its own facts as to what the parent has voluntarily assumed as a part of the business to which he will devote himself and to which he will have his vehicle applied. The extent to which an automobile may be used for the comfort and pleasure of the family is a question to be settled by the parent and it is also a matter for the parent's determination as to whether a son home from military service would be included among those whose comfort and pleasure would be promoted by the use of the vehicle. A parent is not relieved from liability merely because a child is an adult or self-sustaining."

[6] Apart from the family purpose doctrine, plaintiff was entitled to have his case submitted to the jury. Defendant admitted ownership of the 1965 Chevrolet and conceded that it was registered in his name. By G.S. 20-71.1(a), in this action to recover damages for personal injuries, establishment of the fact of ownership of defendant's vehicle at the time of the collision

"shall be prima facie evidence that such motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose." By G.S. 20-71.1(b), establishment of the fact of registration of the vehicle in defendant's name, shall "be prima facie evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment." *Taylor v. Parks,* 254 N.C. 266, 118 S.E. 2d 779, relied on by defendant, is not here applicable. In that case, G.S. 20-71.1(b) was not involved for the reason that plaintiff there had neither allegation nor proof as to registration of the vehicle involved. In that case, plaintiff offered evidence, "clear, convincing and uncontradicted," that at the time of the collision the automobile was being operated without the defendant owner's authority, consent and knowledge, and that the driver was not at the time the defendant's agent, servant or employee acting in the course and scope of his employment in the transaction out of which plaintiff's injuries arose. Our Supreme Court held that such evidence overcame the statutory rule of evidence created by G.S. 20-71.1(a). In the case now before us, plaintiff's evidence was entirely consistent with the statutory rule of evidence created by G.S. 20-71.1(a) and was not so clearly inconsistent with the statutory rule of evidence created by G.S. 20-71.1(b) as to make that section inapplicable.

For the foregoing reasons, the judgment directing verdict against plaintiff must be and is

Reversed.

Judges MORRIS and GRAHAM concur.