UNITED STATES of America,
Plaintiff-Appellee,

v.

$22,640.00 IN UNITED STATES
CURRENCY, Defendant,

James S. Bates and Dennis E. Hendrix,
Claimants-Appellants.

No. 78–2079.

United States Court of Appeals,
Fifth Circuit.

April 11, 1980.

Bates & Hendrix, Dennis E. Hendrix, Edinburg, Tex., for claimants-appellants.

Charles Lewis, Asst. U. S. Atty., Brownsville, Tex., for plaintiff-appellee.

Before COLEMAN, Chief Judge, and REAVLEY and ANDERSON, Circuit Judges.

COLEMAN, Chief Judge.

In this civil forfeiture proceeding the District Court granted a default judgment for the United States based upon failure of anyone to contest the Complaint of Forfeiture. Appellants filed a Motion to Vacate Order and Final Decree of Forfeiture. The District Court denied it on the ground that the client's failure to notify the lawyers of the pending Complaint of Forfeiture was not "excusable neglect" within the meaning of Rule 60(b)(1)[1] of the Federal Rules of Civil Procedure.

Bates and Hendrix appeal, contending that (1) their participation as attorneys for the owners of the res, in previous criminal and administrative proceedings, gave the government notice of their representation of the owners and constituted an "appearance" within the meaning of Rule 55(b)(2)[2]

of the Federal Rules of Civil Procedure, which entitled them to three days notice prior to a default judgment, and (2) that their clients have a meritorious defense within the meaning of Rule 60 of the Federal Rules which entitles them to relief from the default judgment.

For two reasons, we affirm. First, by failing to raise the 55(b)(2) question in the District Court appellants waived it. Secondly, appellants have not established grounds under the terms of rule 60(b)(1) sufficient to require relief from default judgment.

On December 12, 1976, the United States Customs Service made a routine search of a 1972 Ford LTD entering the United States from Mexico at Rio Grande City, Texas. They discovered $22,640.00 of American currency in the possession of the occupants of the car, and a .38 caliber revolver hidden under the floor mat of the car.[3] Because of the failure of the occupants of the car, Garwayne Johnson, Larry W. Jackson and William Ivy Toole, to report the currency, as required by 31 U.S.C. 1058 and 1101 *et. seq.*,[4] the money, the revolver and the car

---

1. Rule 60

Relief from Judgment or Order

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.

On Motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertance, surprise, or excusable neglect; . . . . .

(Only the pertinent parts cited.)

2. Rule 55

Default

(b) Judgment. Judgment by default may be entered as follows:

(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or an incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative), shall be served with written notice of the applica-

tion for judgment at least 3 days prior to the hearing on such application.

(Only the pertinent parts cited.)

3. The record shows contradictions between the Complaint for Forfeiture, filed by the U.S. Attorney, and the September 2, 1977 determinations issued by the U.S. Customs Service, on which of the defendants owned what amounts of the property confiscated, but defendants/Owners in their assignments and the U.S. Customs Service agree on this division of ownership:

Garwayne Johnson: one 1972 Ford LTD; $13,600 in cash

Larry Jackson: one .38 caliber pistol; $4,960 in cash

William I. Toole: $3,900 in cash.

4. 31 U.S.C. § 1101 *Reports*

*Persons required to file*

(a) Except as provided in subsection (c) of this section, whoever, whether as principal, agent, or bailee, or by an agent or bailee knowingly—

(1) transports or causes to be transported monetary instruments—

(A) from any place within the United States to or through any place outside the United States, or

were confiscated by the Customs Service, and the three men were charged with violation of the statute.

The occupants of the car (hereinafter referred to as Owners) retained two lawyers, Dennis Hendrix and James S. Bates, both of Edinburg, Texas, to represent them in the criminal case and in their civil action to recover the confiscated property from the U.S. Customs Service. At an unspecified time in late 1976 or early 1977 Owners Johnson and Toole pled guilty to violation of 31 U.S.C. 1058 and 1101, and were given probated sentences. Owner Jackson did not plead guilty, and charges against him were later dropped. On January 28, 1977, Bates and Hendrix filed Petitions for Remission of Forfeiture on behalf of Owners with the U.S. Customs Service to get all confiscated property returned to the Owners. These petitions were denied by the U.S. Customs Service in letters dated September 2, 1977. These letters informed *the Owners* that their case would be ". . . referred to the U.S. Attorney for the Institution of forfeiture proceedings . . ." and that the property would ". . . be disposed of in accordance to law." The District Director of the U.S. Customs office issuing this determination had copies sent also to Bates and Hendrix.

On October 21, 1977, the U.S. Attorney's Office in Houston, Texas filed a Complaint for Forfeiture in the District Court seeking to secure title in the confiscated property in the United States. Notice of this action was given by publication, as required by Rules A2 and C4 of the Supplemental Rules for Certain Admiralty and Maritime Claims, governing *in rem* actions, such as this one.[5]

(B) to any place within the United States from or through any place outside the United States, or

(2) receives monetary instruments at the termination or their transportation to the United States from or through any place outside the United States

in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section.

*Contents of filed report*

(b) Reports required under this section shall be filed at such times and places, and may contain such of the following information and any additional information, in such form and in such detail, as the Secretary may require:

(1) The legal capacity in which the persons filing the report is acting with respect to the monetary instruments transported.

(2) The origin, destination, and route of the transportation.

(3) Where the monetary instruments are not legally and beneficially owned by the person transporting the same, or are transported for any purpose other than the use in his own behalf of the person transporting the same, the identities of the persons from whom the monetary instruments are received, or to whom they are to be delivered, or both.

(4) The amounts and types of monetary instruments transported.

*Common carriers*

(c) Subsection (a) of this section does not apply to any common carrier of passengers in respect of monetary instruments in the possession of its passengers, nor to any common carriers of goods in respect to shipments of monetary instruments not declared to be such by the shipper.

31 U.S.C. § 1102 *Forfeiture*

(a) Any monetary instruments which are in the process of any transportation with respect to which any report required to be filed under section 1101(a) of this title either has not been filed or contains material omissions or misstatements are subject to seizure and forfeiture to the United States.

(b) For the purpose of this section, monetary instruments transported by mail, by any common carrier, or by any messenger or bailee, are in the process of transportation from the time they are delivered into the possession of the postal service, common carrier, messenger, or bailee until the time they are delivered into or retained in the possession of the addressee or intended recipient or any agent of the addressee or intended recipient for purposes other than further transportation within, or across any border of, the United States.

31 U.S.C. § 1058 *Criminal Penalty*

Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned not more than one year, or both.

5.

Rule A

Scope of Rules

These Supplemental Rules apply to the procedure in admiralty and maritime claims within the meaning of Rule 9(h) with respect to the following remedies:

(2) Actions in rem;

These rules also apply in the procedure in statutory condemnation proceedings analo-

In addition to that notice the U.S. Attorney also sent copies of the Complaint to each of the Owners at their addresses in Georgia. No actual notice of the Complaint for Forfeiture was given to Bates and Hendrix, who had represented Owners in the previous administrative and criminal proceedings stemming from the confiscation of the property at issue.[6]

On December 12, 1977, Owner Johnson assigned his interest in the confiscated property to his lawyers, Bates and Hendrix, to pay the fee he owed them. Neither Johnson nor his lawyers informed the District Court in Brownsville or the U.S. Attorney in Houston of the assignment until after the default judgment had been entered. On December 22, 1977, the U.S. Attorney made a Motion for a Default Decree of Forfeiture, citing Owners failure to respond to the October 21 Complaint for Forfeiture. January 4, 1978 was set as the date for this Motion to be heard. Owners received notice of this Motion, but their lawyers received no actual notification.[7] When neither the Owners nor their lawyers appeared to contest the Motion January 4, 1978, the U.S. Attorney was granted a default judgment.

The record does not indicate how Bates and Hendrix notified the U.S. Attorney of the assignments of Owners to them. On February 3, 1978, Owner Toole assigned his interest to his lawyers. On a date prior to February 9, 1978, the U.S. Attorney was

notified of the assignments, and of Bates and Hendrix's claim to $17,500 of the currency.[8] On February 9, 1978, the U.S. Attorney wrote Bates and Hendrix a letter informing them that the forfeiture had been completed January 4, 1978. Mr. Bates sent a letter protesting the failure of the U.S. Attorney to give Bates and Hendrix actual notice of the proceedings of January 4. In response, the U.S. Attorney sent Bates and Hendrix a copy of the Complaint for Forfeiture, the Motion for Default Decree of Forfeiture, and the Final Decree of Forfeiture. The attorneys say this arrived February 16, 1978, and was their first actual notice of the Forfeiture.

Bates and Hendrix filed a Motion to Vacate Order and Final Decree of Forfeiture February 17, 1978, followed by an Amended Motion March 8, 1978. The motion was denied on April 5, 1978. Bates and Hendrix filed a notice of appeal April 28, 1978.

The record indicates that in their Motion and Amended Motion to Vacate Order and Final Decree of Forfeiture the appellants did not allege a violation of Rule 55(b)(2). Since this point was raised first on appeal, it is waived, and we accordingly do not consider it. *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir. 1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762; *Capps v. Humble Oil and Refining Company*, 536 F.2d 80 (5th Cir. 1976).

---

gous to maritime actions in rem, whether within the admiralty and maritime jurisdiction or not.

Rule C
Actions in Rem: Special Provisions

(4) . . . No notice other than the execution of the process is required when the property that is the subject of the action has been released in accordance with Rule E(5). If the property is not released within 10 days after execution of process, the plaintiff shall promptly or within such time as may be allowed by the court cause public notice of the action and arrest to be given in a newspaper of general circulation in the district, designated by order of the court. Such notice shall specify the time within which the answer is required to be filed as provided by subdivision (6) of this rule.

(Only the pertinent parts cited.)

**6.** In sworn affidavits Garwayne Johnson and William Ivy Toole admit to having received a copy of the Complaint for Forfeiture. They say that they assumed that their attorneys had also received a copy, so they made no mention of the receipt to their attorneys until after default judgment was taken.

**7.** Owners Johnson and Toole made no mention of the Motion for Default Decree of Forfeiture in their affidavits. The U.S. Attorney states it mailed this document to all Owners, and none of the Owners denies it.

**8.** Garwayne Johnson assigned his interest in the 1972 Ford LTD and $13,600. William Ivy Toole assigned his interest in $3,900. Larry Jackson made no assignment.

■ The appeal must rest, therefore, on the assertion that the Owners had a defense to the Complaint for Forfeiture which would have probably been successful, and the failure to respond was due only to "justifiable neglect" as defined in Rule 60(b)(1), both of which must be established to justify relief from the default judgment under Rule 60. The District Court determined that the Owners/clients' failure to notify the attorneys of their receipt of the Complaint for Forfeiture and the Motion for Default Decree of Forfeiture was not sufficient to establish "justifiable neglect" under the meaning of Rule 60(b)(1). Such a determination by the District Court is within its sound discretion, and may not be overturned unless it is determined to have been an abuse of that discretion. *Hand v. United States*, 441 F.2d 529, 531 (5th Cir. 1971). The District Court did not reach the question of whether Owners had a defense to the Forfeiture action which probably would have been successful.

In support of the assertions under Rule 60, appellants cite *United States v. Granda*, 565 F.2d 922 (5th Cir. 1978), a case in which this Court reversed a conviction for violation of 31 U.S.C. 1101 *et seq.*, because the prosecutors failed to prove that defendants "knowingly" and "willfully" violated the act. *United States v. Granda* is not applicable to the issues raised by this appeal because this case does not involve the question of whether the record is sufficient to support a criminal conviction founded on a violation of 31 U.S.C. 1101 *et seq.*, as did *Granda*. Instead, the question here is whether the record shows affirmatively that had appellants actually contested the Complaint for Forfeiture they would have established a meritorious defense that would probably have been successful.

■ Our reading of the record does not indicate the existence of such a defense for Hendrix and Bates. As assignees of their clients, Johnson and Toole, Hendrix and Bates can assert no better right to the res than their assignors had at the time the assignment was made. *United States v. Currency Totalling $48,318.08*, 609 F.2d 210,

214 (5th Cir. 1980); *Florida Bahamas Lines, Ltd. v. Steel Barge "Star 800" of Nassau*, 433 F.2d 1243, 1246 (5th Cir. 1970). Toole did not assign his interest until February 3, 1978, after default judgment had been entered against that interest. Hendrix and Bates therefore obtained nothing through the assignment of Toole's interest.

■ Johnson assigned his interest on December 16, 1977, after he received notice of the Complaint of Forfeiture, but before default judgment was entered against his interest. That alone does not determine what Bates and Hendrix obtained through the assignment. After determining when the assignment was made the crucial question is when the assignment was *perfected* against the United States, that is, when the proper agent of the United States received notice of Johnson's assignment. If such perfection was made prior to Johnson's placing impediments on the res, assignees took free of such impediments. If perfection was not achieved until after assignor had allowed impediments on it, assignees took subject to such impediments. *United States v. Currency Totalling $48,318.08*, 609 F.2d 210, 214 (5th Cir. 1980). In this case the United States did not receive notice of the Johnson assignment until early February 1978, a month after default judgment was entered. Hendrix and Bates took Johnson's interest subject to the impediment of default judgment, and therefore took nothing through the Johnson assignment.

The impediments of failure to perfect the assignments against the United States, an adverse claimant, until after entrance of default judgment, and of the default judgment itself deprive Hendrix and Bates of a sufficient interest in the seized res to contest the forfeiture. Because of this lack of standing appellants cannot establish a meritorious defense that probably would have been successful, as rule 60(b)(1) requires for relief from a final judgment.

The decision of the District Court in rejecting appellants Motion to Vacate Order and Final Decree of Forfeiture was correct. We affirm it.

AFFIRMED.