LUTHER F. BELL

*v.*

KENNY WEST, *et al.*

(No. 14356)

Decided December 9, 1981.

*G. David Brumfield, Ballard & Brumfield,* for appellant.

*J. Strother Crockett, Tutwiler, Crockett, LaCaria & Murensky,* for appellees.

PER CURIAM:

The question presented in this appeal is whether the owner of a motor vehicle can be held liable under the family purpose doctrine for personal injuries caused by his child's negligent operation of the vehicle where the child has not lived in his household for several years. We hold that the family purpose doctrine does not apply on the facts of this case and affirm.

I.

Luther Bell instituted this negligence action in 1967 seeking damages for personal injuries received when he

fell from the back of a Ford pickup truck, owned by Ozie West and then being driven by his son, Kenny West. The complaint against both the father and son alleged that the truck was owned and maintained by Ozie for general family purposes and that Kenny was operating the truck as a member of his family. The father's answer denied the truck was maintained for general family purposes and asserted that his son was not a member of his family for the purposes of the family purpose doctrine. The question of the father's liability, assuming liability on the part of his son, was submitted to the trial court upon an agreed statement of facts. The court held that the family purpose doctrine did not apply, and dismissed the action as to the father with prejudice. Because the trial court considered matters outside the pleadings, the ruling dismissing the action against the father must be considered as one granting a summary judgment. *Chapman v. Kane Transfer Co.,* 160 W. Va. 530, 236 S.E.2d 207 (1977).

The material facts as agreed upon below are that Ozie West was divorced in 1957. The custody of the children, including his son Kenny West, who was then eight years old, was awarded to his former wife. Ozie remarried in 1967. When Kenny was sixteen years old he quit school in West Virginia and moved to New Jersey, where he was living and working at the time of the accident on May 29, 1967. He had returned to West Virginia to visit his father, mother, and other relatives over the Memorial Day weekend.

After moving to New Jersey two years prior to the accident, Kenny only returned to West Virginia on three occasions: Christmas 1966, Memorial Day 1967, and the Fourth of July 1967. On the last two visits, he asked for and received permission to drive his father's truck for his own pleasure and convenience.

On May 29, 1967, Kenny was given permission to use the truck for his own pleasure and at his own convenience. He had been so using the truck from about Sunday, May 28, 1967, until Tuesday, May 30, 1967. The accident occurred when Kenny was hauling some furniture for his friend.

Kenny was not on any mission for his father at the time of the accident.

## II.

This State is committed to and has repeatedly followed the family purpose doctrine. The doctrine was adopted in the case of *Jones v. Cook*, 90 W. Va. 710, 111 S.E. 828 (1922), a case involving a stepdaughter who was a member of the defendant's family and under twenty-one years of age. In embracing the doctrine, the Court relied on agency principles and public policy grounds.

Our decisions have held the father liable under this doctrine for the negligent operation of the family automobile by an infant stepdaughter, *Jones, supra,* by a minor son, *Jenkins v. Swank*, 116 W. Va. 116, 180 S.E. 10 (1935), and by an adult residing in the parental home, employed and partially dependent on his father. *Watson v. Burley,* 105 W. Va. 416, 143 S.E. 95 (1928). In *Watson,* the son, who was twenty-five years of age at the time of the accident, had married and moved to Ohio, but had returned to live at the home of his father for financial reasons. The *Watson* decision made clear that emancipation is not the sole criterion for determining who is a member of the family for purposes of the family purpose doctrine:

> "A son residing with the father does not cease to be a member of the father's family when he arrives at his majority by reason of that fact alone." *Id.* at 419, 143 S.E. at 96.

In *Wyant v. Phillips*, 116 W. Va. 207, 179 S.E. 303 (1935), the Court held a wife liable for the negligent operation of an automobile by her husband where she owned the car and he provided for its operation and maintenance.

The last decision of this Court on the scope and application of the family purpose doctrine occurred over a decade ago in *Freeland v. Freeland*, 152 W. Va. 332, 162 S.E.2d 922 (1968), where it was held the owner of an automobile could be held liable under the family purpose doctrine for injuries sustained by a guest as a result of the negligent operation of the automobile by the owner's unemancip-

ated minor son even though the son, because of a subsequent marriage to the injured guest, enjoyed immunity from suit by the guest.[1]

Although the family purpose doctrine is firmly entrenched in the jurisprudence of this State, we have never applied the doctrine to a factual circumstance where the son's relationship to the owner of the car is as attenuated as it is in this case. While a number of states have abandoned or refused to adopt the family purpose doctrine,[2] in those states which have adopted the doctrine, we do not find any case which would support the application of the family purpose doctrine under the facts presented here. In *Clemons v. Busby,* 144 Ga. App. 207, 240 S.E.2d 764 (1977), the Georgia court held the father was not liable under the family purpose doctrine where his son was emancipated, self-supporting, exercised exclusive control over the car, and did not reside in the family home. Similarly in *Platt v. Gould,* 26 Ariz. App. 315, 548 P.2d 28 (1976), the family purpose doctrine was found not to apply where the daughter had reached majority, had moved from the family abode to her own home in another city, was employed and self-sufficient, and was driving the vehicle solely for her own purposes at the time of the accident. The Court determined that the daughter was not a member of the family unit, which it defined to require a common living place or residence.

In *McGinn v. Kimmel,* 36 Wash.2d 786, 221 P.2d 467 (1950), the son upon returning from military service was married, left the family home and established and maintained one of his own. He did not own an automobile, but

---

[1] Apparently one reason there are so few cases today concerning the family purpose doctrine is the passage of Chapter 17D, Article 4, Section 12(b)(2), of the West Virginia Code of 1931, as amended, which requires all liability insurance policies issued in this State to contain a provision making anyone using an insured vehicle with the express or implied permission of the named insured, an additional insured. Under this provision the owner and consensual driver of a motor vehicle are both insured.

[2] A majority of jurisdictions would appear to have rejected the family purpose doctrine. *See* Annot., 8 A.L.R.3d 1191 (1966).

occasionally used the one belonging to his father. On one occasion he desired to visit his wife's parents. He secured his father's permission to use the automobile for this purpose, and while on this journey the collision occurred. The court held the father was not liable under the family purpose doctrine, stating:

> "[I]t is our opinion that when a child leaves the family circle and establishes a home of his own he ceases to be a member of the family within the meaning of the family purpose doctrine, and when he uses his parents' automobile with their consent and for his own pleasure he is a borrower of it and not an agent." 221 P.2d at 469.

*See also, Bryan v. Schatz,* 77 N.D. 9, 39 N.W.2d 435 (1949); *Montgomery v. Hyatt,* 46 Wash.2d 468, 282 P.2d 277 (1955); *see generally,* Annot., 8 A.L.R.3d 1191 (1966).

Based on the foregoing authorities, we affirm the trial court's award of summary judgment, and hold that the owner of a motor vehicle cannot be held liable under the family purpose doctrine for personal injuries caused by his child's negligent operation of the vehicle where the child has not lived in his household for several years.[3] The facts in this case were not disputed, and the trial court correctly held that the father, Ozie West, was entitled to judgment as a matter of law. The rule applicable here was set forth in Syllabus Point 1 of *George v. Blosser,* 157 W. Va. 811, 204 S.E.2d 567 (1974):

> "A movant is entitled to summary judgment where the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances." *Hanks v. Beckley Newspapers Corp.,* 153 W. Va. 834, 172 S.E.2d 816 (1970).

---

[3] In view of our disposition of the family purpose doctrine issue on the merits in favor of the appellee, Ozie West, we decline to reach the issues raised in his motion to dismiss the appeal as improvidently granted.

## III.

The appellee, Kenny West, cross-appeals contending the trial court erred in granting a default judgment against him and in striking his untimely answer because the appellant failed to give notice of the motion seeking a default judgment as required by Rule 55(b). Rule 55(b)(2) provides that notice of the application for default judgment must be given three days prior to the hearing on the motion, where the party against whom the default judgment is sought has appeared in the action, either personally or by a representative.

There is no dispute that Kenny West did not plead or otherwise defend the action in a timely manner as required by the Rules of Civil Procedure. Upon being served through the Secretary of State at his New Jersey address in February of 1975, he telephoned plaintiff's counsel in West Virginia and was advised to contact the attorney representing his father in the action. This he failed to do. On June 2, 1975, at the setting of the docket in the trial court, plaintiff's counsel informed counsel for the father that service had been obtained on Kenny West and that Kenny had been advised to contact them. The case was continued. Sixteen days later, without notice to either Kenny West or defense counsel, the plaintiff filed a motion and affidavit for default judgment. The motion was granted and a hearing was scheduled for an inquiry as to the amount of damages.

One month after the default judgment had been entered, Kenny West, without leave of court, filed an answer. On motion of the appellant, the answer was stricken as untimely. No motion was ever filed pursuant to Rule 60(b) alleging excusable neglect or the presence of any other reason justifying relief from the operation of the default judgment.

In view of these undisputed facts, it is unnecessary to consider whether Kenny West or his representative made an appearance for purposes of Rule 55(b)(2) entitling them to notice of the motion for a default judgment. We are of

the opinion that failure to raise the question of a violation of Rule 55 (b)(2) in the trial court precludes raising the issue on appeal. Because the appellee did not allege a violation of Rule 55(b)(2) in the trial court and has first raised this issue on appeal, we consider it waived and accordingly do not consider it. *United States v. $22,640.00 in United States Currency*, 615 F.2d 356 (5th Cir. 1980); *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir.), *cert. den.*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1975).

For the foregoing reasons, we affirm the judgment of the Circuit Court of McDowell County.

*Affirmed.*

HARSHBARGER, CHIEF JUSTICE, dissenting:

The majority today does not reject the family purpose doctrine. It reaffirms it for West Virginia.[1] What it does, is limit it unnecessarily and I believe, unwisely.

Our Court supports the public policy underlying the rule as articulated in *Watson v. Burley*, 105 W. Va. 416, 420, 143 S.E. 95, 96 (1928):

> A moving consideration for this adoption [of the family purpose doctrine] was to place "the financial responsibility of the owner behind the automobile while it is being used by a member of the family, who is likely to be financially irresponsible." Should we not give to the word "family" a comprehensive definition in order to meet the practical purpose behind the adoption of this doctrine?

*Watson* defined an appropriate "family purpose" liability test – "[N]ot whether the child is adult or minor, but whether he was using the car for a purpose for which the parent provided it with the permission of the parent

---

[1] We are aware that many jurisdictions have rejected the doctrine entirely. *See* Annot., Modern Status of Family Purpose Doctrine with respect to motor vehicles, 8 A.L.R.3d 1191, 1221, §13. Most of these states have "owner liability" statutes, however, that hold vehicle owners liable for the negligence of *any* driver of their cars.

either express or implied." *Id.*, at 421, 143 S.E. at 97. In *Freeland v. Freeland*, 152 W. Va. 332, 162 S.E.2d 922 (1968), Justice Caplan explained:

> [T]he family purpose doctrine is founded on the principles of the law of agency or of master and servant. Where one purchases and maintains an automobile for the comfort, convenience, pleasure, entertainment and recreation of his family, any member thereof operating the automobile will be regarded as an agent or servant of the owner, and such owner will be held liable in damages for injuries sustained by a third person by reason of the negligent operation of the vehicle by such agent or servant. The family member is carrying out the purpose for which the automobile was provided. Were not liability incurred by the owner of the automobile in such circumstances, an innocent victim of the negligence of a financially irresponsible driver would be entirely without recourse. This could not be condoned.

* * *

"This doctrine puts the financial responsibility of the owner behind the automobile while it is being used by a member of the family (who is likely to be financially irresponsible), in furtherance of the business and purposes for which it is maintained." From the reasoning employed in the *Jones* case, supra, as noted in Watson v. Burley, 105 W.Va. 416, 143 S.E. 95, 64 A.L.R. 839, it is evident that the Court will require the owner of an automobile to be financially responsible for the operation of such automobile by a member of his family. In the latter case the owner was liable even though the member of his family operating the vehicle was an adult. Public policy requires financial responsibility from one who permits his automobile to be used for its intended purpose. Justice demands such responsibility—lest an innocent victim be left remediless. *Id.* at 336-337, 162 S.E.2d, at 925-926.

*See Burns v. Main*, (D.C. Alaska 1950) 87 F. Supp. 705; *Hutchins v. Haffner*, 63 Colo. 365, 167 P. 966 (1917); *Michaelsohn v. Smith*, 113 N.W.2d 571, 8 A.L.R.3d 1183 (N.D. 1962); *King v. Smythe*, 140 Tenn. 217, 204 S.W. 296 (1918).

Here, we have an innocent victim; we have a family car or truck; we have a father (owner) who permitted his family car to be used by a family member (his son). A family is a family whether its members live together or not. A son does not become merely a "friend" because he lives in another house—or even in another country—or has a job. *Contra, Marques v. Ross*, 105 Ga. App. 133, 123 S.E.2d 412 (1961); *Daniel v. Patrick*, ____ Ky. ____, 333 S.W.2d 504 (1960).

In our transient, dispersed society, families are often divided by divorce, by distant educational and job opportunities: many parents do not enjoy the live-in or close company of their driving-age children. When their children come "home" or to visit, parents frequently give them unrestricted use of the family car for their pleasure. If a family member is financially irresponsible (the only instance when the doctrine is important) and negligently uses the family car injuring an innocent third party, there exists the very situation to which the doctrine was devised to apply. *See White v. Varanda*, 13 N.C. App. 19, 185 S.E.2d 247, 251 (1971). We should not look to age, self-sufficiency or residence of the parties—we should only determine that there is a family car, and that it was used by a family member with its owner's permission.

If the doctrine were intended to cover only persons in the same household, it would be called the "same household" doctrine. It is not. Nor is it called the "dependent party" doctrine or "unemancipated child" one. "Family" means "family" and a family does not lose that quality through years, distance or financial independence.[2]

_____
[2] We note that when the child is financially responsible, joint liability will not "hurt" the parent. If the child is financially irresponsible, the parent or family member, rather than the innocent tort victim, should bear the cost of that child's negligent use of a family motor vehicle.

I see no reason to hold that the family purpose doctrine does not apply. I would reverse the summary judgment and permit the issues of liability and damages to be adjudicated.